INGALLS SHIPBUILDING CORPORATION, et al. *v.* KING

No. 40338          January 21, 1957          92 So. 2d 196

*White & White,* Gulfport, for appellant.

*Morse & Morse,* Poplarville; *Robert E. Newton,* Wiggins, for appellee.

874

GILLESPIE, J.

Appellee, A. F. King, was awarded temporary total disability by the attorney-referee and this order was affirmed by the full commission and the circuit court.

Appellee worked in the employer's shipyard as a burner from April 4, 1947 to October 29, 1947. On April 13, 1951, he returned to work as a burner and continued performing that work until August 23, 1953, when he quit because of the loss of his eyesight. When appellee returned to work as a burner on April 13, 1951, he was 48 years of age and his eyesight was good. His duties as a burner required that he use a torch that burned a mixture of oxygen and acetyline, which gave off heat, a brilliant red light, and infra-red rays. The torch was used to burn off metal from the sides of the ship. He worked in closely confined places called the inner bottoms of the ship for periods of from one-half hour to one-half day two or three times a week, but there would be times when he would not work in the inner bottoms for a week or two. The balance of his work was performed on other parts of the ship. When working in the inner bottoms the heat would be intense and the torch was held not over a foot from his eyes. When working on other parts of the ship, the torch would be from eighteen inches to two feet from his eyes. Appellee wore goggles, the lens of which would become cloudy from the heat and would have to be changed frequently. Sometimes small bits of metal would fly through the vents in his goggles and stick on appellee's eyeballs.

After appellee had been working as a burner about two years, he had trouble with his eyesight and went to

a physician. It was found that he had cataracts. After consulting with the physician and getting glasses, he still could not see satisfactorily. He took up the matter of his eyes with a superior, who suggested to appellee that he go see an eye specialist in Mobile, Alabama, but not at the company's expense. Appellee went to Mobile, and consulted the specialist and after some medication and new glasses his eyes were in condition where he could work. When he returned to his work he told a superior that the doctor said for him not go back to burning, nevertheless, appellee was again put to burning and by the end of the week his eyesight had become so dim that he could not do his work. Appellee discussed this with a superior and said: "You put me in hot holes and bad places but this morning I will never pick up that torch again. My eyes are gone again." The superior then went with appellee to the headhouse and instructed the clerk to put on appellee's sick leave slip "absence of eyesight." This occurred on August 23, 1953, and appellee has since been totally disabled because of the condition of his eyes.

Although conflicting, the medical proof was sufficient to establish that ordinarily the formation of cataracts is a degenerative process that begins in some people at an earlier age than in others and develops more rapidly in some than in others; that cataracts are caused and aggravated by the absorption of radiant energy, and that infrared rays, such as given off by the burning torch used by appellee, may cause cataracts to form, and if one has incipient cataracts, the absorption of radiant energy and infra-red rays is calculated to aggravate the cataracts and accelerate the loss of eyesight. Taking the testimony as a whole, from the expert and lay witnesses, we think there was substantial evidence that appellee's cataracts were either caused by the absorption of radiant energy and infra-red rays, or that the cataracts were aggravated by

such absorption so as to accelerate the onset of his disability.

Appellants argue that the commission erred in holding that appellee suffered an accidental injury arising out of and in the course of his employment. It is contended that there was no specific event, definite as to time and place; that there was no trauma, no force, no sudden mechanical or structural change, or unexpected breaking of the internal structure of the body; and that, therefore, there was no accident within the meaning of the compensation act. It is contended that the disability resulting from routine exposure is not an accident within the meaning of the compensation act.

The testimony of appellee's physician showed that exposure to excessive light or radiant energy is repeated minor trauma. The question of whether appellee suffered an accidental injury has been resolved against appellants' contention by the case of Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234, 60 So. 2d 645; and Tate v. Dr. Pepper Bottling Company, 220 Miss. 311, 70 So. 2d 602. In the Byrd case the employee was engaged in using an electric chisel the recoil of which caused him to be subjected to vibrations that bore upon a congenital malformation resulting in a disabling condition. The Court in that case said that the cumulative sum of such successive vibrations added up to a cumulated impact differing from a single blow only in the circumstance that the cumulating impulses were transmitted progressively. In the Tate case the aggravation of a congenital pilonidal cyst and resulting disability was brought about by the employee constantly riding in a truck and the constant rubbing of the affected part incident to such riding. In both cases, the disability was the result not of any specific event definite as to time and place, but to a constantly recurring minor trauma, the cumulative effect of which was held to be the equiv-

alent of a single blow insofar as the accident concept is concerned.

■■■ When the testimony before the attorney-referee was concluded, appellee stated that he would like to have the privilege of putting on testimony in rebuttal of the testimony of appellants' physician. Some six months elapsed before the deposition of Dr. Rouse was taken by agreement of counsel. Dr. Rouse had previously testified when the claimant put on his case in chief. It is contended that appellee's case was made, if it was made at all, on the rebuttal testimony of Dr. Rouse. Appellants say that this was error. The hearings before the attorney-referee and the commission are informal and the rules of evidence are relaxed in compensation cases. It would have been the better procedure for appellee to put on in chief all his testimony necessary to make out a case but the commission is entitled to a wide latitude in the ascertainment of the facts. ■■■ Only in cases where there is a clear abuse resulting in prejudice to the other party would this Court be justified in interfering with the manner in which the attorney-referee or commission conducts a hearing or investigation. Sec. 6998-28, Mississippi Code of 1942.

■■■ It is argued that the order of the commission affirming the order of the attorney-referee was not based on substantial evidence. It is true that in the deposition of Dr. Rouse appellee's attorney asked a hypothetical question that was not justified under the evidence. It assumed facts that had not been proven in reference to the exposure of appellee to the burning torch with which he worked. We assume, however, that the triers of fact did not make the finding of fact on this hypothetical question. The whole of the testimony was sufficient for the attorney-referee and commission to find that exposure to radiant energy given off by the burning torch caused or aggravated the cataracts resulting in appellee becoming disabled.

The testimony of Dr. Rouse, an eye specialist, in behalf of appellee is to some extent contradictory but the contradictions appear to have resulted from the physician's attempt not to make arbitrary statements. Dr. Rouse stated that he had talked to appellee in reference to the exposure to the torch and he did not know the exact length of time appellee was exposed; and before the improper hypothetical question was asked, he stated, "I may have an opinion and still be much in error, but my opinion is that if a man has incipient cataracts and was exposed to light such as this man was exposed to, the condition would be definitely aggravated." He further stated that his opinion was supported by recognized authorities. Again Dr. Rouse stated that while not knowing the exact amount of exposure, "if he (appellee) had considerable exposure he probably aggravated his cataractus condition."

These favorable statements sufficient to make out a case on the medical question are offset to some extent by other statements made by the physician, but taking his testimoney as a whole we are unable to say that the commission did not have substantial evidence upon which to base its findings in favor of appellee.

The order of the attorney-referee, which was affirmed by the full commission and the circuit court, found that claimant was temporarily totally disabled and awarded compensation accordingly. Appellants contend that this was error. The proof showed that an operation would be indicated when the cataracts reach a certain stage of development, and that claimant's vision should be thereby restored with a probability of some disability following the operation. Appellants contend that if the appellee declines to undergo the operation, then he should be declared permanently totally disabled from August 23, 1953; that we should remand the case to the commission for a determination whether the claimant desires an operation. This is not necessary. The case will be re-

manded to the commission, however, as a usual procedure on the affirmance of an award. If it should be later determined that claimant has been permanently totally disabled from August 23, 1953, the order would be for the payment of $25 per week for a period not to exceed 450 weeks, or the maximum of $8600, whichever shall be the lesser in amount, less the amount theretofore paid as temporary total disability. In Morgan v. J. H. Campbell Construction Co., 90 So. 2d 663, we held that permanent partial disability shall be paid following compensation for temporary total disability, but that nowhere does the statute provide that permanent total disability shall be paid in addition to payments for temporary total disability.

We have carefully considered the several other assignments of error and it is our conclusion from consideration of the case as a whole that the commission's order was based on substantial testimony and that there is no basis for us to disturb the commission's findings.

Affirmed and remanded.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes,* JJ., concur.