NICHOLAS COMPANY, INC., et al. *v.* DODSON

No. 40630 January 20, 1958 99 So. 2d 666

*Butler, Snow, O'Mara, Stevens & Cannada, Dan McCullen,* Jackson, for appellants.

*W. S. Moore, Pyles & Tucker,* Jackson, for appellee.

ROBERDS, P. J.

This is a workmen's compensation case. Dodson claims that on July 26, 1955, while about his duties as an employee of Nicholas Company, Inc., one of appellants, he fell and seriously injured himself, from which he became paralyzed on the left side of his body, resulting in total and permanent disability, for which he is entitled to compensation at the hands of his employer and its insurer, under the Mississippi Workmen's Compensation law. Appellants say Dodson suffered a cerebral hemorrhage which brought on the paralysis, totally disconnected from his employment, and appellants are under no duty to compensate for the injury. The Commission and the circuit court found in favor of Dodson, from which finding Nicholas and its insurer appealed here.

 The main issue is whether the paralysis was the result of a fall by Dodson or whether it was the result of a cerebral brain hemorrhage wholly disconnected from Dodson's work as an employee of Nicholas. If there is substantial evidence to support the findings of the Commission and the circuit judge then we are not at liberty to override such findings.

There is little dispute in the evidence as to the facts save as to the conclusion upon the cause of the paralysis.

Dodson went to work for Nicholas about eight o'clock on the morning of July 26, 1955. He was thirty-eight years of age, robust and in perfect health, and had never

been attended by a doctor. He was put to work moving metal pipes. These were in a pile and were to be removed to another place some twelve feet away. The pipes were two to four inches in diameter and some twenty-two feet long. They weighed from 77 to 87 pounds each. It took two men to remove each pipe. Dodson had been about this work for around an hour when he fell into the pile of pipes, striking the end, or ends, of the pipes, breaking his jaw and knocking out several teeth and causing other injuries to his face and head. He was rendered semi-conscious. The only material dispute in the testimony to this point is as to what caused him to fall and the position he was in when he fell. Dodson said ''I stumbled, foot slipped, or something and I fell''. The testimony of two other eyewitnesses supports his statement. The testimony of one witness for appellants tends to show that Dodson, when he fell, was standing erect, with his feet close together, from which the conclusion might be reached that the cause of his fall was the brain hemorrhage. However, this witness finally said he was about five feet from Dodson, had his back to Dodson, did not see him fall, and the first he knew of the fall was when he heard Dodson ''holler'', he looked around and Dodson had fallen.

Dodson was placed in an automobile and rushed to the office of Dr. A. E. Gordin. Dodson had recovered somewhat and was able to talk. Dodson told the nurse he had gotten too hot and he lost consciousness and ''passed out'' and fell onto the ends of the pipes. Dr. Gordin testified that he found Dodson with a compound fracture of the jaw. He said, ''He was pretty clammy all over, looked like a very sick boy—in pretty bad condition''. However, his blood pressure was within normal limits and he found no hytertension. There was no evidence or indication, of paralysis at that time. His jaw could not be treated in the doctor's office so the patient was sent in an ambulance to St. Dominic Hospital in

Jackson. The doctor testified "He was sent to the hospital for this jaw". Dr. Gordin saw the patient at the hospital that afternoon. By then he had become paralyzed. He was in no condition for treatment of the jaw. Dr. Gordin then called Dr. Neill, a neuro-surgeon, for consultation. X-rays were made of the jaw and brain. Dr. Neill performed an exploratory brain operation. The X-rays and operation did not, according to Dr. Gordin, indicate the cause of the paralytic stroke. The X-ray pictures and the examination by Dr. Neill did not disclose any physical injury to the brain structure, such as a blood clot or rupture, which would have resulted in paralysis of the body. Dr. Gordin said he could not positively say the fall brought on the paralysis, but he finally said it might have done so. He said prize fighters sometime become paralyzed as a result of a violent blow on the jaw. These blows are, of course, in close proximity to the brain. Specifically, Dr. Gordin said "* * * we have brain damage from anybody that falls any way. I think it is a question whether or not a lick causes the brain damage or whether the lick throws him down and the floor causes the brain damage". This statement was made with reference to effect of violent blows upon the chins of prize fighters. In a report to the insurance carrier, dated July 28, 1955, Dr. Gordin explained that the history of Dodson's case was that he fell against an iron pipe; that he had a large laceration over the right jaw and compound fracture of the jaw; that he was sent to the hospital and thereafter became semi-conscious and paralyzed on his left side, including both the left arm and left leg; that he couldn't say whether the patient had a cerebral hemorrhage and fell or whether he had heat exhaustion and fell against the pipe causing the subsequent hemorrhage; that the operation by Dr. Neill did not reveal any pathology. He then said "It is my opinion, however, that he has some brain damage due to the fall."

Appellants rely upon the testimony of Dr. Charles L. Neill. Dr. Neill was called in for consultation by Dr. Gordin. Dr. Neill saw the patient at the hospital in the afternoon. In his testimony he explained that the X-rays and examination disclosed a compound fracture of the patient's jaw, and when he saw the patient he was paralyzed on his left side. He then said the "skull X-rays were normal". They disclosed no blood clot or hemorrhage, or thrombosis. He said he did not know what produced the paralysis but he had an opinion about it. He said a thrombosis was generally of a spontaneous origin. He then said "About the only thing I can say, if he hadn't been over a piece of pipe he would have hit something else, but did hit a piece of pipe and fractured his jaw, and I do not think that the thrombosis is in any way related to his work activities". He was asked "Was that fall sufficient to produce brain damage?" He replied, "Yes, think the force of the fall was sufficient to produce disturbance of the brain".

It should be stated that claimant was in the hospital from July 26 to September 3.

██ We have time and again said that where there is substantial evidence to sustain the findings of fact by the Commission we will not disturb that finding. A late case so announcing the rule, and citing prior authorities, is that of Alexander Smith, Inc., and Employer's Mutual Life Insurance Co. v. Genette, 232 Miss. 166, 98 So. 2d 455. We deem it unnecessary to undertake to evaluate the testimony as to what caused the paralysis. It is evident, we think, that the findings of the Commission and the circuit court are amply sustained by the testimony in this case.

██ Some question is raised about the amount of the allowance made by the circuit court. It is undisputed that Dodson became totally and permanently disabled July 26, 1955, and he should receive compensation on that basis beginning the date of the injury. The order

of the Commission awarded temporary total disability at $25 per week from the date of the injury for a period of 13 weeks, and then total and permanent disability at $25 per week from October 25, 1955, under Section 8, Sub-section (a) of the statute. It is necessary to amend such order so as to provide for such payment from July 26, 1955, for total permanent disability for 450 weeks but not to exceed $8,600, whichever is less. Morgan v. Campbell Cons. Co., 90 So. 2d 663; Prince v. Nicholson, 91 So. 2d 734; Ingalls Shipbuilding Co. v. King, 92 So. 2d 196.

■■ Counsel for Dodson has moved this Court to allow them a fee in this Court additional to that allowed in the circuit court. Counsel had a written contract with Dodson under which they were entitled to twenty-five percent of the amount recovered without an appeal and thirty-three and one-third percent of the amount recovered in case of appeal. The contract was duly approved by the Commission. Therefore, counsel will be allowed eight and one-third percent additional for their services in this Court, or a total of thirty-three and one-third percent for all the services they have rendered in this cause.

Affirmed as modified and remanded.

*Lee, Holmes, Arrington* and *Ethridge, JJ.*, concur.