Insurance Department of Mississippi, et al. *v.* Dinsmore

No. 40790          May 19, 1958          102 So. 2d 691

July 3, 1958                    104 So. 2d 296

*Butler, Snow, O'Mara, Stevens & Cannada, Dan Mc-Cullen,* Jackson, for appellants.

*Lipscomb, Ray & Barksdale,* Jackson, for appellee.

LEE, J.

Mrs. Alice Dinsmore, in her claim for workmen's compensation benefits against the Insurance Department of Mississippi and its carrier, was granted an award by the attorney-referee. On successive appeals by the defendants, the award was affirmed both by the commission and the circuit court, and they have brought this appeal here.

In the meantime Mrs. Dinsmore died on November 1, 1957, and the action has been revived in the name of R. R. Dinsmore, the lawfully appointed administrator of her estate.

The claimant was sixty years old, and her weekly wage was in excess of $37.50. For many years she had been an employee of the Insurance Department, and had risen to the position of deputy commissioner. Her duties were both clerical and executive. It was shown that she was a perfectionist, loyal and very conscientious, but at the same time irritable, high tempered, high-strung, and not disposed to delegate these duties to others. In fact, she resented any effort to decrease her work. While her work load had been substantially reduced, still she kept just as busy as before. She was very exacting of her subordinates. The first four months of the year was

the period of greatest activity in the office, with the consequent increased stress and strain.

The claimant had been afflicted with hypertension or high blood pressure for sometime. In fact, she suffered a mild stroke on February 27, 1951, and another on April 8, 1953. In spite of these attacks, she continued to work with little, if any, interruption. In the afternoon of May 4, 1955, she had been signing her mail. Either because she was going to be off the next day, or because Commissioner Davis would be working, she was seated at her desk trying to line-up the work, that is, making notes. While doing this, she became unconscious and suffered the disability for which claim was made.

Drs. L. T. Carl, Charles L. Neill, and John Gallogly were offered as witnesses by the claimant. Dr. Carl, who had treated Mrs. Dinsmore for several years, and who was present when she regained consciousness; made an elaborate report in which he included her history. The examination, following the April 1953 attack, showed her blood pressure was 225/115. His diagnosis as to the May 4, 1955 attack was as follows: "(1) Hemiplegia, left, due to (2) Thrombosis, right middle cerebral artery and (3) Hypretensive cardiovascular disease." His opinion as to the relationship between her work and the attack was as follows: "It is my impression that her job was a rather responsible one, and in a busy office surely carried with it a certain degree of tension and nervous strain. This probably contributed to the hypertension, which indirectly was one factor in the production of her attack of 4 May 1955. In this manner, it was, in my opinion, contributory. However, I would not state that it was responsible for the vascular changes which usually precede thrombosis."

Dr. Neill, who also attended Mrs. Dinsmore, said that intense activity can aggravate hypertension, and that he did not know of any practitioner who, in view of her hypertension in 1953, would not have advised her to re-

duce her activity. He was submitted a hypothetical question, embracing the claimant's traits, the nature of her employment, and the manner in which she performed her duties, and was asked whether her attitude toward her work and her activity in the department contributed to the attack of May 4, 1955. His reply was, "Yes, as long as you remember this could have happened anyway."

Dr. Gallogly, who had been a consultant to her on August 1, 1955 and June 23, 1956, was of the opinion that the work load which Mrs. Dinsmore carried, coupled with her type of person, aggravated her hypertension.

Dr. S. H. McDonnieal, an internal medicine man, and Dr. William H. Rosenblatt, a specialist in the cardio-vascular diseases, as witnesses for the defendants, discussed the difference between a cerebral thrombus and a cerebral hemorrhage. They attributed the thrombus to a disease known as arteriosclerosis, which, because of deposits of cholesterol, causes a decrease in the size of the arteries and diminshes the blood supply, thus increasing the chance of the formation in the blood of a clot, or thrombus. On the contrary, the elevated blood pressure speeds the flow of blood, thus reducing the chance of a clot, but increasing the chance of a cerebral hemorrhage. Dr. McDonnieal conceded that stress and strain in a pre-existing hypertensive can aggravate the patient's condition. He was of the opinion that, with a blood pressure of 225/115 in April 1953, Mrs. Dinsmore's activity should have been decreased; and that, to some extent, it was dangerous for her to continue her work. He admitted that loss of consciousness may occur either from a thrombus or hemorrhage, and that, although it was not done in her case, a spinal puncture is useful to determine which of these is the cause. While expressing the opinion that there was no connection between her work and the formation of a thrombus, he conceded that hypertension could possibly be a contributing factor in the end result of a thrombus, although unlikely.

Dr. Rosenblatt was of the opinion that in the absence of other impairment a curtailment of activities is unnecessary, and that there was no connection between what Mrs. Dinsmore was doing and the attack.

Neither Dr. McDonnieal nor Dr. Rosenblatt had seen or examined claimant. Their opinions were based on hypothetical questions. Dr. McDonnieal conceded that the attending physician is in better position to know what has happened to the individual patient, but Dr. Rosenblatt, because of his experience, thought that his opinion should not be discounted to any extent merely because he had not attended Mrs. Dinsmore.

The appellants contend that the relentless and inexorable march of a disease or condition of life is not a compensable injury arising out of and in the course of employment simply because the disability manifested itself during a period of employment. They say that the disability must result either from traumatic injury, or precipitation of a dormant condition by specific exertion, or from the special hazard of the work not experienced by the public generally. They contend that appellee's proof is insufficient to show a causal relation between her employment activity and her subsequent disability. They cite a large number of cases, which, they contend, sustain their views.

But Dr. Carl attributed the paralysis to thrombus and hypertension. He said that Mrs. Dinsmore's duties probably produced a certain degree of stress and strain which contributed to her hypertension; and that hypertension was one factor in producing the attack. Corroboration for that conclusion is found in the testimony of Dr. Neill; and Mr. McDonnieal conceded it as a possibility.

Dunn's Mississippi Workmen's Compensation Section 94, pp. 75-6, contains a good statement of the holding of our cases with reference to the relationship of work to disability, to-wit: ''While disability or death from the physical or medical standpoint must arise out of employ-

ment as a proximate result, it is sufficient as a basis for compensation that the work is a contributing cause. It need not be the sole or even the primary cause of resulting disability or death, but if substantial contributing causal connection is found, the claim is fully compensable without apportionment or deduction. Moreover, causal connection is viewed from the standpoint of the injured employee, and pre-existing disease or infirmity does not disqualify the claim if it be found that the employment aggravated, accelerated or combined with the disease or infirmity to produce the disability or death for which claim is made." The above text lists many decided cases, beginning with Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234, 60 So. 2d 645, and continuing up to and including Prentiss Truck and Tractor Co. v. Spencer, (Miss.) 87 So. 2d 272. Compare Nicholas Co. v. Dodson (Miss.) 99 So. 2d 666, and Harper Foundry and Machine Co. v. Harper, (Miss.) 100 So. 2d 779.

In Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356, the woman suffered a ''massive cerebral vascular accident,'' while stooping over, as she had been doing previously, to pick up the tung nuts. This caused the blood to rush to the head, and at least contributed to the accident. That was physical exertion.

In W. G. Avery Body Company v. Hall, 224 Miss. 51, 79 So. 453, one of the contributing factors was that the claimant ''was doing work which he was not qualified to do and which he did not usually do.'' This would indicate that there was both physical and emotional exertion.

■■ ■ It seems to be implicit in the medical evidence that hypertension can be aggravated by either physical or mental and emotional exertion. In other words, a victim of this malady might suffer disastrous effects from running up a flight of steps. On the other hand, the shock, occasioned by the receipt of a death message, might produce a like result. Mrs. Dinsmore, in order to serve all persons desiring to transact business with

the Department during a given day, often ate lunch, in the office. When she was successful in this aim to see all callers, undoubtedly she experienced elation, with practically the same effect as excitement. On the contrary, if she did not attain this objective, no doubt she had a feeling of disappointment and frustration. In either event, there was the stimulus for an accelerated blood pressure, stemming from her zealous effort, although misguided perhaps, to discharge her duties and perform her work efficiently. Immediately before the stroke, either because she was to be out of the office the next day, on account of which the affairs might not run smoothly, or because she was expecting her employer, and for that reason desired to have the records ready for his consideration, she doubtless exceeded her employer's expectations and perhaps worked above and beyond the call of duty. It seems unthinkable that, if hypertension may be aggravated either by physical or mental and emotional exertion, courts should be willing to accept the physical as causative, but reject, as not accidental, a disability, proximately resulting from mental and emotional exertion. Unless the provisions of the Workmen's Compensation Act apply in such a case as this, its value is lessened insofar as office workers are concerned.

Of course an employer takes his employees as they are. Some may be indolent. Others may be exceptionally energetic. Some may have little appreciation of potential danger. Others may be unduly alarmed over possible perils. The disposition to give a full day's work for a full day's pay is certainly not to be frowned upon. It is commendable when an employee strives to perform her duties efficiently and merit the confidence reposed by her superior. While her effort may be more than demanded, such devotion can hardly justify a demerit against her deportment. If Mrs. Dinsmore, in her then state of health, had been motivated by self-interest, undoubtedly she would have greatly curtailed her activities.

No doubt most people, in like circumstances, would have done so. Thus it may be said that, under all of the circumstances, she was guilty of negligence in failing to do what a reasonable person would have done. But even so, such negligence can play no part in this case, because under the provisions of the Workmen's Compensation Act, negligence does not bar a recovery.

On such a highly technical issue arising by reason of the divergent viewpoints of learned doctors, it should not be expected that this Court can, or will, undertake to adjudicate that the attack in question resulted solely from a thrombus or clot, and that the increased blood pressure, owing to the stress and strain of the claimant's work activities, could have had nothing whatever to do with her disability. Especially is this true when it is borne in mind that there was ample evidence from which the triers of fact were warranted in finding that the aggravation of the claimant's pre-existing hypertension was one of the factors which contributed to the attack.

Cases too numerous to mention have announced the rule that this Court will not vacate or set aside an award where the finding of the Commission, on a disputed question of fact, is supported by substantial evidence.

From which it follows that the judgment of the circuit court must be, and is, affirmed.

Affirmed.

All Justices concur except *Roberds* and *Gillespie, JJ.,* who dissent.

GILLESPIE, J. dissenting:

With deference, I am unable to agree that the disability in this case is compensable.

This case opens a new field in the application of the Workmen's Compensation Law, one which I believe to be entirely foreign to the purpose and letter of the Act. In

substance, this case holds that if the emotional attitude of an employee toward the employment adversely affects her health, resulting in disability, there is an injury arising out of her employment. It seems to me that it is stretching the Act beyond legitimate bounds to say that emotional traits, or mental attitudes towards one's employment acting on the physical body is an "injury" arising out of the employment. The Act never contemplated that the mental life of an employee, comprising intellectual, emotional, and impulsive activities and predispositions, should become the cause, or precipitating cause, of a compensable "injury".

*Roberds, J.* joins in this dissent.

## ON SUGGESTION OF ERROR

ETHRIDGE, J.

Appellants assert that the evidence does not support the finding of the Workmen's Compensation Commission that the work activities of Mrs. Dinsmore contributed to the cerebral thrombosis which she suffered on May 4, 1955. We have reviewed again the medical and non-medical evidence on this issue, and find appellants' position to be without merit.

As Deputy Insurance Commissioner, Mrs. Dinsmore had a strenuous administrative job manifestly involving considerable physical exertion, which phrase includes both bodily effort and mental activity. Her duties were supervisory, clerical and stenographic. She was second in authority to the Insurance Commissioner, and many of the functions of that office devolved on her, including licensing of insurance agents, examinations of annual statements submitted by insurance companies, the approval of them, examination of foreign insurance companies applying for admission to do business in the state, inventories of supplies and equipment, purchasing, etc. The Commission further was warranted in finding that, although she had been relieved of some duties, the in-

creased volume of work in the office resulted in Mrs. Dinsmore having still an equal or heavier burden. She had just finished the three busiest months of the year, when she had the ''stroke''. After one reduces the plethora of medical testimony to the precise issue, three of the five doctors who testified gave as their opinions that her employment or work contributed to and aggravated her hypertensive, cardiovascular disease, which was one of the factors in the production of the cerebral thrombosis, and that the hemiplegia was attributable to both the thrombosis and the hyptertensive cardiovascular disease.

The courts do not pass upon the weight of the medical evidence where the same is conflicting and reasonable. That is the duty of the trier of fact. The work must be only a contributing and not the sole cause of the injury, and the injury is compensable if the employment aggravated, accelerated or combined with the disease or infirmity to produce the disability or death for which compensation is sought. W. G. Avery Body Co. v. Hall, 224 Miss. 51, 79 So. 2d 453 (1955). The medical evidence amply supported the Commission's finding of a contributing connection in fact between the claimant's strenuous work activities and the cerebral thrombosis.

There are a multitude of cases awarding compensation where the work contributes to or aggravates a cerebral hemorrhage. 4 Schneider, Workmen's Compensation Law (1945) Secs. 1328, 1332, 1302; 58 Am. Jur., Workmen's Compensation, Sec. 255. The experience of other courts in this field demonstrates that any subtle medico-legal distinction between a cerebral hemorrhage and thrombosis would be impractical and unrealistic. 1 Larson, Workmen's Compensation Law (1952) Secs. 38.70, 38.72, 38.73. The issue as a matter of medical causation is the ability of the particular work activities or strains to affect the particular diseased vascular sys-

tem. The direct medical question is whether, given this particular employee's pathology and the exertions of the job, the exertions in fact contributed to the collapse. The medical evidence as a fact must show a causal connection between the obligations of the employment and the final injury. The claimant's injury or death must be caused in some reasonable substantial degree by the employment. 1 Larson, Ibid., Sec. 38.81. The evidence here meets these requirements.

■■ The injury does not have to develop instantaneously, but may accrue gradually over a reasonably definite and not remote time. For example, weeks of work and strain may lead to the cerebral thrombosis. Hardin's Bakeries v. Ranager, 217 Miss. 463, 64 So. 2d 705 (1953); 1 Larson, Ibid., Secs. 39.10, 39.30. This in effect was what the Commission found in the light of the medical evidence. Cf. Fireman's Fund Indemnity Co. v. Ind. Acc. Comm., 39 Cal. 2d 831, 250 P. 2d 148 (1952); Pa. Threshermen & Farmers' Mutual Casualty Ins. Co. v. Gilliam, 88 Ga. App. 451, 76 S. E. 2d 834 (1953); Lumbermen's Mutual Casualty Ins. Co. v. Ind. Acc. Comm., 29 Cal. 2d 492, 175 P. 2d 823 (1946).

■■ Appellants are in error in interpreting our original controlling opinion as basing compensability upon a specific emotional disturbance of May 4, 1955, or of any prior time period. As stated therein, we concluded that there was substantal medical testimony to support the Commission's finding that "the stress and strain of the claimant's work activities" contributed to her thrombosis. Of course "work activities" comprehend both bodily and mental activities accompanied by stress and strain, all of which are physical in nature, and all of which are present in this case. ■■ The Workmen's Compensation Act, covering injuries arising out of and in the course of "employment", includes employments of all types where there are eight or more employees, with stated exceptions. In each case the issue is one of medical causation.

Suggestion of error overruled.

All Justices concur except *Roberds and Gillespie, JJ.,* who dissent.

ROBERDS, P. J. concurring in part and dissenting in part.

I was not in accord with the original opinion in this case. In the opinion on Suggestion of Error the majority has eliminated emotions and individual personal traits as factors to be considered in determining liability of employers. I agree with that conclusion. However, I am yet of the opinion that the evidence in this case fails to establish a compensable claim under the Workmen's Compensation Act. In my opinion a realistic view of the evidence reveals nothing more than a case where the degenerative diseases of the claimant developed to the point of disablement while she was on duty and that there is no substantial evidence of causal connection between her duties and her disability.

*Gillespie, J.,* Concurs in the views expressed herein.