324 So.2d 759 (1975)
RIVERSIDE OF MARKS and Travelers Insurance Company
v.
Eddie R. RUSSELL.
No. 48287.
Supreme Court of Mississippi.
December 8, 1975.
As Modified on Denial of Rehearing January 19, 1976.
*761 Daniel, Coker, Horton, Bell & Dukes, Forrest W. Stringfellow, Jackson, for appellants.
Jack A. Travis, Jackson, for appellee.
Before PATTERSON, INZER and SUGG, Justice.
SUGG, Justice.
This is an appeal from a judgment of the Circuit Court of the First Judicial District of Hinds County reversing an order of the Workmen's Compensation Commission and entering judgment for claimant.
The questions presented for decision are (1) whether the injury sustained by the claimant arose out of the employment, and if so, (2) whether apportionment of the award is required, (3) the rate of compensation payable, and (4) the amount of penalties payable, if any.
Claimant, Eddie R. Russell, sought to recover for injuries sustained by him while unloading baggage from his employer's airplane. During the morning of November 6, 1971, claimant loaded approximately 300 pounds of baggage onto the airplane for a trip from Marks, Mississippi, to New Orleans, Louisiana. The location of the plane's baggage compartment necessitated that claimant stoop over with the baggage in hand to reach the compartment. One piece of the luggage weighed an estimated 60-80 pounds.
While unloading the baggage in New Orleans, claimant began to experience difficulty in maintaining his coordination and balance causing him to fall repeatedly against the left side of the plane's steps. The condition steadily worsened during the remainder of the day so that by the next morning he was unable to walk by himself. Claimant was taken to Oschner's Foundation Hospital in New Orleans where it was determined that he had suffered a cerebrovascular accident to the right area of the brain. He remained at Oschner's for 12 days undergoing tests and physical therapy. Following his inability to secure further employment, claimant was admitted to the Veterans Hospital where he underwent six and one-half weeks of treatment for depression. As of the date of the hearing before the Attorney-Referee, claimant was capable of slow deliberate movements. Except for a three week period when he cleaned up houses, he had remained unemployed.
The specific medical question before the Attorney-Referee was whether the stroke was caused by a cerebral thrombosis or a cerebral hemorrhage. The testimony from both sides was that statistically a thrombosis is not usually precipitated by exertion or stress while a hemorrhage is generally brought on by these factors. The claimant's physician testified that the injury was caused by a hemorrhage which was precipitated by the work of unloading the plane. Conversely, the employer's physicians testified that the injury was the result of a thrombosis which was in no way related to claimant's work but which merely coincided with the work. The only point of agreement among all of the testifying physicians was that regardless of its physiological origins, the onset of the stroke occurred while claimant was unloading the plane.
The Attorney-Referee denied the claim on the ground that the medical evidence was insufficient to show that the stroke arose out of the employment. The order of the Attorney-Referee was affirmed by the Workmen's Compensation Commission, one member dissenting.
*762 On appeal to the Circuit Court of the First Judicial District of Hinds County, the order of the Commission was reversed and judgment entered for claimant in the amount of $56 per week for 450 weeks.
We recognize the substantive evidence rule and its directive that a decision of the Commission on a disputed issue of fact will be affirmed where there is substantial and reasonable evidence to support the findings of fact. See V. Dunn, Mississippi Workmen's Compensation § 289 at 403 (2d ed. 1967), and cases cited therein. Yet, the rule is not inflexible so as to prevent the Court from checking any fundamentally erroneous exercise of administrative power either as to the findings of fact or the application of the act. Universal Manufacturing Co. v. Barlow, 260 So.2d 827, 831 (Miss. 1972); V. Dunn, supra at 407-08; see Todd's Big Star v. Lyons, 301 So.2d 847, 849 (Miss. 1974). The ultimate goal on review is "to ascertain whether or not the beneficent purpose of the Workmen's Compensation Law has been carried out." Russell v. Sohio Southern Pipe Lines, Inc., 236 Miss. 722, 732, 112 So.2d 357, 361 (1959).
After a careful review of all the evidence, we find that the Workmen's Compensation Commission erred in denying benefits and the Circuit Court properly awarded compensation for a work-related injury.
Dr. George Porter, one of the examining physicians and a witness for the employer, was of the opinion that the infarct was thrombotic in nature and related to an underlying arteriosclerotic disease because "the most common cause of an infarct is an obstruction ... and the most common cause of that obstruction is ... arteriosclerosis." He pointed out, however, that his opinion was based on statistical experience and possibilities, not probabilities. Based on possibilities, he felt that a hemorrhage was "the less likely of the two possibilities," despite the facts that it was "[v]irtually, impossible to distinguish between the two" and "a small hemorrhage in the same area could have resulted in the very same result."
In response to the question of whether the work in any way aggravated, precipitated, or contributed to the injury, Dr. Porter responded that "[I]t was extremely difficult if not impossible to answer" the question because to his knowledge that question had "never been satisfactorily answered either affirmatively or negatively." Nevertheless, he remained of the opinion that the work had nothing to do with the injury although he conceded that other physicians might differ with his analysis.
Testifying on the basis of a hypothetical question, Dr. F. Earl Fyke, Jr., was also of the opinion that the infarct was thrombotic and the result of an underlying arteriosclerotic disease. In response to the question of whether or not the work aggravated, precipitated, or contributed to the injury, Dr. Fyke stated that although the question had never been satisfactorily answered, he felt the work had nothing to do with the injury.
Dr. Theodore Soniat, an examining physician and witness for the employer, also testified that the infarct was thrombotic "because an archogram performed by him on claimant in the area of the neck did not show any significant narrowing of the arteries from arteriosclerosis." He felt the thrombus was caused, not by any underlying arteriosclerotic disease, but by the adhesion of elements within the blood. He testified that the injury was not work-related. On cross examination, Dr. Soniat agreed that he belonged to a school of medical thinking which felt physical exertion had nothing to with the precipitation of a thrombosis.
Testifying for the claimant, Dr. James L. Crosthwait felt the infarct was caused by a work-related hemorrhage because of the absence of arteriosclerosis in the claimant's body.
*763 As revealed by the foregoing, a great deal of testimony was devoted to determining whether the infarct was caused by a thrombosis, which is usually not work-related, or by a hemorrhage, which is usually work-related. Insurance Department of Mississippi v. Dinsmore, 233 Miss. 569, 102 So.2d 691 (1958), suggestion of error overruled, 233 Miss. 581, 104 So.2d 296 (1958), rejected the very argument urged here by the employer. Speaking for the Court, Judge Ethridge held that:
"[A]ny subtle medico-legal distinction between a cerebral hemorrhage and thrombosis would be impractical and unrealistic." (233 Miss. at 582, 104 So.2d at 297).
See Walker Manufacturing Co. v. Pickens, 206 So.2d 639, 640 (Miss. 1968). Here, as in Dinsmore, the only issue is whether the injury was work-related. The work need not be the sole cause of the injury; it must only be a contributing factor.
We hold that there is ample evidence to show that the claimant's cerebrovascular injury was caused by the work. The facts that claimant had no preexisting condition, no history of cardiovascular or cerebrovascular health problems, no significant narrowing of the arteries and was undergoing strenuous physical labor at the time of the onset are all material considerations in our holding. Cf. Flintkote Co. v. Jackson, 192 So.2d 395 (Miss. 1966). "Practical and commonsensical logic shows that this man's work contributed to his stroke." Dean Truck Line, Inc. v. Wilkes, 248 So.2d 462, 464 (Miss. 1971). See also Walker Manufacturing Co. v. Pickens, supra.
The next question is whether the employer is entitled to the benefit of the apportionment statute. The lower court held that the apportionment statute could not be applied because the employer failed to raise the affirmative defense of a pre-existing condition. Mississippi Code Annotated section 71-3-7 (1972). We find, however, that the employer raised the defense properly and timely in his answer.
To be entitled to apportionment, however, the employer must establish the four factors set out in Cuevas v. Sutter Well Works, 245 Miss. 478, 485, 150 So.2d 524 (1963):
(1) that there must be a pre-existing physical handicap, disease or lesion, (2) this pre-existing condition must be shown by medical findings, (3) to be a material contributing factor in the results following injury, and (4) the compensation otherwise payable is reduced by that proportion which the pre-existing condition contributed to the production of the results following the injury. (245 Miss. at 485, 150 So.2d at 527).
See Mississippi Code Annotated section 71-3-7 (1972).
At the hearing before the Attorney-Referee, the employer relied upon an alleged preexisting arteriosclerotic disease as the cause of the claimant's injury. No testimony was introduced to show that the alleged disease was anything less than the sole cause of the infarct. Testifying for the employer, both Dr. Fyke and Dr. Porter believed the infarct was due to an underlying arteriosclerotic condition which had been developing over a period of years. However, Dr. Soniat, the physician who performed the archogram, found "no significant narrowing" of the arteries just below the head. For this reason, he believed the infarct to be the result of factors other than arteriosclerosis. To this, Dr. Crosthwait testified that the infarct was the result of a hemorrhage of weak blood vessels in the head.
All things considered, the nature of the alleged preexisting disease, if any, would seem more closely akin to the normal degenerative conditions of the body which accompany age rather than the material contributing factor called for by Cuevas *764 and the statute. See Youngblood v. Ralph M. Parsons Co., 260 So.2d 188, 190 (Miss. 1972); Weaver Pants Co. v. Duncan, 231 So.2d 489, 491 (Miss. 1970). We hold, therefore, that the employer failed to carry the burden of proving that there was a pre-existing physical handicap, disease, or lesion which was a material contributing factor to the results following the injury.
A further matter of consideration is the amount of compensation payable. The lower court ordered the payment of compensation for permanent and total disability at the rate of $56 a week for 450 weeks.
The testimony before the Attorney-Referee showed that claimant had regained some use of his left side so as to be capable of slow deliberate movements. The resulting condition has, however, precluded the possibility that claimant will ever pilot an aircraft again. Moreover, as of the date of the hearing before the Attorney-Referee, claimant had been unable to secure any form of permanent or semi-permanent employment. He is, therefore, entitled to compensation for permanent and total disability. V. Dunn, supra at §§ 72, 74, 79. However, as the date of the claim herein was November 6, 1971, the maximum weekly benefits allowed are $40 per week for 450 weeks not to exceed the maximum limitation. Stuart Manufacturing Co. v. Walker, 313 So.2d 574, 576 (Miss. 1975).
The circuit court ordered the employer and carrier to pay the 10% penalty prescribed by Mississippi Code Annotated section 71-3-37(5) (1972) and the $100 for a physician chosen by claimant under Mississippi Code Annotated section 71-3-15(5) (1972). The above penalties were properly assessed by the circuit court.
The circuit court also awarded claimant a $100 penalty under Mississippi Code Annotated 71-3-67(4) (1972) for failure of the employer to file a notice of injury (Form B-3).
Section 71-3-67(1) (1972) requires that an employer shall file a first notice of injury with the Commission within ten days after the occurrence of an injury. Section 71-3-67(4) provides:
Whenever an employer fails or refuses to file any report required of him by this section, the commission may in its discretion add a penalty not to exceed one hundred dollars ($100.00) to all or any awards which may be made as a result of the unreported injury. (Emphasis added).
The injury complained of was sustained by claimant on November 6, 1971, and the B-3 filed by the employer was not filed until December 2, 1971. The employer, therefore, failed to comply with the statute. However, the penalty under section 71-3-67(4) is not mandatory, but is discretionary with the Commission where an award has been rendered by the Commission. Since the Commission did not make the award, it has never exercised its discretion as to the penalty. Since the circuit court and not the Commission awarded compensation, the case is remanded to the Commission to determine the propriety of awarding the penalty under 71-3-67(4).
Claimant is entitled to 6% interest on each installment of compensation from the due date thereof. Goodnite v. Farm Equipment Co., 234 Miss. 342, 103 So.2d 391, 104 So.2d 298, 106 So.2d 383, 683 (1958). Accord: Leake County Cooperative v. Dependents of Barrett, 226 So.2d 608, 614 (Miss. 1969); Gulf Park College v. Wheeler, 237 Miss. 155, 156, 113 So.2d 666 (1959); Russell v. Sohio Southern Pipe Lines, Inc., 236 Miss. 722, 735, 112 So.2d 357, 113 So.2d 667 (1959); V. Dunn, Mississippi Workmen's Compensation § 293 at 414 (2d ed. 1967).
Since the employer was successful in reducing the award of the circuit court from $56 to $40 per week, 5% statutory damages are not allowed. Costs are apportioned *765 70% to appellant and 30% to appellee to conform to the proportion of the award made by the circuit court and reduced here. This case is remanded to the Commission for further proceedings not inconsistent with this opinion.
Affirmed in part, reversed in part and remanded.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.