IRVING, J.,
for the Court.
¶ 1. Fresenius Medical Care and Continental Casualty Company appeal from a judgment entered by the Circuit Court of Yazoo County affirming the decision of the Workers’ Compensation Commission awarding benefits to the Estate of Stella *1026 Woolfolk.[1] The issue presented in this appeal is whether there was substantial evidence to support the Commission’s finding that the telephone call from the patient on the morning of March 28, 2000, was an untoward event that caused, exacerbated, and/or aggravated Woolfolk’s aneurysm, causing it to rupture.
¶2. We find a lack of substantial evidence to support the Commission’s finding that Woolfolk suffered a work-related injury, or stated another way, that the telephone call which Woolfolk received on the morning of the rupture of her aneurysm was an unnerving, untoward event which caused, exacerbated, or aggravated Wool-folk’s aneurysm. Therefore, we reverse and render the judgment of the circuit court affirming the decision of the Commission.
FACTS
¶ 3. A petition to controvert was filed on behalf of Woolfolk by her son, Glenn Wool-folk, seeking disability benefits and payment of medical costs. Woolfolk’s claim was thereafter submitted to an administrative law judge of the Workers’ Compensation Commission on written stipulation, deposition testimony of medical experts, and written briefs by counsel. The administrative law judge ruled in favor of Fresenius Medical Care and Continental Casualty Company, finding that Glenn Woolfolk, as conservator of Woolfolk’s estate, failed to meet his burden of proof; therefore, the administrative law judge denied the claim.
¶ 4. Woolfolk appealed to the Full Commission. In a split decision, the Commission reversed the administrative law judge and held that there was substantial evidence to support the finding that Woolfolk suffered a compensable work-related injury. Upon appeal by Fresenius and Continental, the Yazoo County Circuit Court affirmed the decision of the Commission.
¶ 5. The operative facts are these: Stella Woolfolk worked as a registered nurse at Central Dialysis Center in Yazoo City, Mississippi. She became ill on the morning of March 28, 2000, after receiving a telephone call at work between 5:30 a.m. and 6:00 a.m. from a patient who had undergone dialysis at the clinic the day before. The patient told Woolfolk that the patient thought that the patient was over her proper fluid weight and was experiencing shortness of breath. Shortness of breath is a known symptom of fluid retention in dialysis patients, and on the rare occasion this occurs, the patient is asked to come back for re-dialysis the next day. Woolfolk advised the patient to return to the clinic for re-dialysis after determining that a place was available that morning. Thereafter Woolfolk proceeded to review the patient’s chart with a coworker.
¶ 6. Within about five minutes after taking the phone call, Woolfolk called for a coworker to help her, stating that her head was hurting. By the time her coworker reached her, Woolfolk began to complain that her legs were feeling weak. Woolfolk asked one of her coworkers to assist her to a chair. After assisting Woolfolk to a chair, the coworker propped up Woolfolk’s legs. Woolfolk began rubbing her own legs. Woolfolk also put her hands behind her head and neck and stated that she had a headache. She became unresponsive. A coworker immediately checked Woolfolk’s blood pressure, but the pressure was re *1027 portedly too high to be recorded on the automatic machine. A manual machine was then used and a reading of more than 200 over more than 130 was obtained. Woolfolk’s speech became slurred, and she became agitated and scared. Woolfolk then became disoriented and an ambulance was summoned by a call to 911. Emergency personnel soon arrived and obtained a blood pressure reading of 232 over 114.
¶ 7. Due to the very high reading, Wool-folk was transported to King’s Daughters Hospital where a brain scan was done. The scan showed that she had a brain hemorrhage, and she was immediately transported by ambulance to University Medical Center in Jackson, Mississippi. Testing revealed that Woolfolk had a preexisting five millimeter aneurysm that ruptured, resulting in a stroke.
¶ 8. Woolfolk underwent surgical procedures for her aneurysm at the University Medical Center on March 28 and 29, 2000, after which she improved to be awake, alert, and oriented with good speech and no focal neurologic changes. However, nine days following her hemorrhage, she became confused. On April 6, 2000, Wool-folk underwent an angioplasty procedure. Woolfolk never regained consciousness after receiving the angioplasty procedure, and she remained in a vegetative state until her death on February 28, 2003. She was fifty-six years old.
¶ 9. Dorothea Lockwood, Woolfolk’s supervisor, testified by stipulation that Wool-folk was a competent nurse who always received positive annual evaluations. Lockwood stated that Woolfolk had never received a written reprimand, although she had received a “correction” once for failing to contact a patient’s physician before changing the patient’s calcium. Lockwood went on to state that by the time she arrived at work on March 28, 2000, the ambulance had already arrived to attend to Woolfolk. Lockwood also stated that before Woolfolk was carried out, Woolfolk simply told her, “Hi, Dorothea, I just got a headache.” Woolfolk did not make any other statements before being taken to the hospital.
¶ 10. Lockwood remembered talking to the patient, who telephoned Woolfolk, when the patient came to the dialysis center that morning, and the patient was not upset over the fact that she had to come back for additional dialysis. According to Lockwood, it is not unusual for patients to be re-dialyzed, and Woolfolk followed the standard protocol by having the patient come back that morning. Also, according to Lockwood, Woolfolk never liked to re-dialyze patients, but she knew that it was protocol to do so when necessary. Lockwood stated that the type of incident involving the patient who called on the morning of March 28, 2000, was a common event in all dialysis centers operated by Fresenius, and such incidents had happened before and have happened since Woolfolk’s aneurysm ruptured. Lockwood also stated that Woolfolk would not have been reprimanded for the incident.
¶ 11. Keith Alderman supervised the nine dialysis centers operated by Freseni-us in Mississippi. In his stipulated testimony, Alderman stated that he generally telephoned once a week and visited the Yazoo City facility once a month and that at no time did Woolfolk ever mention or complain to him about any problems she might be having at work. Alderman’s stipulated testimony corroborated Lockwood’s testimony that (1) Woolfolk followed standard protocol in having the patient come back in to be re-dialyzed, (2) Woolfolk would not have been reprimanded for having the patient be re-dialyzed, (3) patients being re-dialyzed are not an every day occurrence, and (4) patients sometimes have to be re-dialyzed.
*1028 ¶ 12. Shirley Broomfield, a very good friend of Woolfolk, was a registered nurse and a staff nurse at Central Dialysis Center. In her stipulated testimony, Broom-field confirmed that Woolfolk sought her assistance after taking the phone call from the patient that wanted to be re-dialyzed. Broomfield testified that Woolfolk complained of a headache and that her legs were weak, but Woolfolk ■ never said anything to her about being upset over the phone call from the dialysis patient on the morning of March 28, 2000. Broomfield acknowledged that patients occasionally had to be re-dialyzed and that such an event was not unusual, although it was rare.
¶ 13. Daphne Bryant, a patient care technician at Central Dialysis, was on duty •on the same shift as Woolfolk on the morning of March 28, 2000. In her stipulated testimony, Bryant stated that she and Woolfolk reviewed the treatment sheet of the dialysis patient who called on the morning;of March 28, 2000, and it was their opinion that there was no reason for the patient to come back in, but it was normal protocol to have the patient come back if the patient wanted to do so. According to Bryant, Woolfolk was never upset during Woolfolk’s discussion about the patient coming back in, but was only concerned, about whether or not the patient would actually need to be re-dialyzed. Bryant stated that there-was never any discussion about Woolfolk’s job being in jeopardy or about Woolfolk being reprimanded by her supervisor because of the patient having to be re-dialyzed. Bryant also stated that following the phone call from the patient, Woolfolk was concerned only as a nurse would normally be concerned about a patient, but nothing out of the ordinary happened involving the phone call.
¶ 14. Woolfolk’s mother, Alice Tate, Glen Woolfolk, and Angela Garner, the mother of Woolfolk’s grandchild, each testified that they heard Woolfolk state either that her job was stressful or that she had a stressful relationship with her supervisor, Lockwood.
¶ 15. It was stipulated that Woolfolk had no recorded medical history of elevated blood pressure prior to March 28, 2000, and that her initial blood pressure reading, as obtained by emergency personnel at around 6:00 a.m. on March 28, 2000, was 232 over 114. This was a very high pressure reading.
¶ 16. Dr. Lynn Stringer, a Jackson neurosurgeon, testified in support of Wool-folk’s claim. Dr. Stringer never treated Woolfolk, and his testimony was based on the available medical records, as well as deposition testimony of certain lay witnesses. Dr. Stringer opined that being emotionally upset or stressed can cause a sudden elevation of blood pressure, that elevated blood pressure can exert increased pressure on the wall of a blood vessel in the brain, and that such increase in pressure can cause an existing aneurysm to rupture. Dr. Stringer conceded that there was no medical literature supporting his theory, which he said was based on “common sense.” Dr. Stringer also conceded that Woolfolk did not have a history of hypertension and that there was no way anyone could have known what her blood pressure was at the moment her aneurysm ruptured. At a later point in his deposition, Dr. Stringer acknowledged and reiterated that his opinion about the cause of the rupture of Woolfolk’s aneurysm was based on the assumption that the phone call from the patient was emotionally stress-inducing.
¶ 17. Dr. Winfield Fisher, III, a practicing neurosurgeon and a professor of neurosurgery, served ás the employer and *1029 carrier’s medical expert. Like Dr. Stringer, Dr. Fisher never treated or examined Woolfolk and gleaned his knowledge of her particular case from pertinent medical records and deposition testimony of certain lay witnesses. Dr. Fisher opined that it could not be proven that any stress related to her job, especially in relation to the telephone call, caused Woolfolk to suffer a bleed out of her aneurysm or a subarach-noid hemorrhage. Dr. Fisher stated in his deposition that there is no literature to support the notion that stress is a cause for subarachnoid hemorrhage. Dr. Fisher was also of the opinion that it is impossible to state that a stressful phone call could be the cause for a subarachnoid hemorrhage or could exacerbate or accelerate a bleed out of an aneurysm. Dr. Fisher further testified that he has observed an elevated blood pressure in patients waiting to undergo aneurysm surgery, but the elevation in blood pressure occurred after the rupture of the aneurysm, not before.
STANDARD OF REVIEW
¶ 18. The standard of review in workers’ compensation cases is limited. Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003). The substantial evidence test is used. Id. (citing Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245-47 (Miss.1991)). The Workers’ Compensation Commission is the trier and finder of facts in a compensation claim. Id. This Court will overturn the Workers’ Compensation Commission decision only for an error of law or an unsupported finding of fact. Id. (citing Georgia Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991)). Reversal is proper only when a Commission’s order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Id. (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992)).
¶ 19. Both parties have raised the issue of whether the Daubert standard[2] should apply to the expert testimony of Dr. Stringer.[3] In essence, Daubert requires that expert testimony be based upon a reliable foundation and be relevant to the task at hand.[4] There is no question that Dr. Stringer’s deposition testimony wass relevant to the task at hand. However, he cited no studies or medical literature to support his opinion (1) that being emotionally upset or stressed' can cause a sudden elevation of blood pressure, (2) that elevated blood pressure can exert increased pressure on-the wall of a blood vessel in the brain, and (3) that such increase in pressure can cause an existing aneurysm to rupture. Hfe clearly testified that this opinion was based upon certain factual assumptions and “common sense” analysis. Because we find that there is no substantial evidence supporting a critical fact assumed and relied upon by Dr. Stringer — that the call from the patient to Woolfolk emotionally upset Woolfolk and induced stress in her — we do not find it necessary to reach the merits of whether Dr. Stringer’s testimony complied with the Daubert standard. We do point out, however, that the Workers’ Compensation Commission operates under a relaxed evi-dentiary standard. See Miss.Code Ann. § 71-3-55(1) (Rev.2000); M.W.C.C. Procedural Rule 8 (1993).
*1030 ANALYSIS AND DISCUSSION OF THE ISSUE
¶20. The primary issue in this case is whether there was substantial evidence to support the Commission’s finding that the phone call from the patient on the morning of March 28, 2000, was an untoward event that caused, exacerbated, and/or aggravated Woolfolk’s aneurysm, causing it to rupture.
¶ 21. It is undisputed that Woolfolk suffered a ruptured aneurysm, resulting in a hemorrhagic stroke, while acting in the scope of her employment. It is also admitted that she had a pre-existing aneurysm. The central question here is whether there is substantial evidence to support the Commission’s finding that Woolfolk’s employment contributed to her fatal condition.
¶ 22. Fresenius and Continental argue that there is no substantial evidence to support the Commission’s finding that Woolfolk’s injury is compensable. In support of this argument, Fresenius and Continental assert that Woolfolk’s entire theory of liability relies on the finding of fact that the. phone call was stressful, causing her blood pressure to increase and her pre-existing aneurysm to bleed. Freseni-us and Continental contend that there is no evidence in the record that the phone call was stressful, nor is there any evidence that even implies that the phone call was stressful. Although there was ample evidence that there was an increase in blood pressure after the rupture of the aneurysm, Fresenius and Continental contend that there is no evidence that there was an increase in blood pressure prior to the rupture of Woolfolk’s aneurysm. In other words, Fresenius and Continental contend that there is no evidence that the spike in blood pressure caused the rupture as opposed to being a condition of the rupture.
¶ 28. The estate counters that the Commission had substantial evidence to support its finding that Woolfolk’s injury was compensable. The estate maintains that the expert testimony and stipulated testimony of various lay witnesses support the conclusion that the stressful work relationship with her supervisor, in conjunction with the stress caused by an emergency type of. phone, call from a dialysis patient, caused her elevated blood pressure' and the rupture of her pre-existing aneurysm.
¶24. In'support of its argument, the estate cites Ins. Dep’t of Miss. v. Dinsmore, 233 Miss. 569, 102 So.2d 691 (1958). In Dinsmore, the claimant suffered a stroke while performing her duties as an employee of the Insurance Department of Mississippi. The court held that her injury was compensable, even though there was contradictory medical testimony as to the cause of the stroke. However, the court’s ruling was based largely on the fact that the claimant had a history of hypertension and had suffered two previous strokes. Id. at 575, 102 So.2d at 692. In addition, there was ample evidence from which the finders of fact were warranted in finding that the aggravation of the claimant’s pre-existing hypertension was one. of the factors which contributed to her stroke. Id. at 580, 102 So.2d at 695. We find Dinsmore inapplicable because it is undisputed that Woolfolk did not have a history of hypertension, and the evidence does not support an inference that her work environment aggravated any pre-ex-isting hypertension she may have had.
¶ 25. In addition to citing Dinsmore, the Estate of Woolfolk also cites Riverside of Marks v. Russell, 324 So.2d 759 (Miss.1975) in support of its contention that the rupture of Woolfolk’s aneurysm is a com-pensable work-related injury.
¶ 26. In Riverside of Marks, the court held that the claimant’s cerebral vascular injury was work-related. Id. at 762. How *1031 ever, we also find this case to be inapplicable because, unlike the claimant in Riverside of Marks who suffered his cerebral vascular injury after having to constantly stoop over with an estimated sixty to eighty pounds of luggage in hand in order to load the luggage into a plane’s baggage compartment, there is no evidence in the record to support the contention that Woolfolk was engaged in any strenuous physical labor when her pre-existing aneurysm ruptured.
¶ 27. The Mississippi Supreme Court has stated that it is not within the authority of a reviewing court to re-weigh the evidence in order to determine whether the preponderance of the evidence “might favor a result that is contrary to the Commission’s determination.” Hollingsworth v. I.C. Isaacs and Co., 725 So.2d 251, 254(¶11) (Miss.Ct.App.1998). “So long as there is substantial evidence in the record to support the Commission’s findings, this Court is obligated to affirm the Commission.” Id. at 254-55 (¶¶ 11-12). “Although it is true that the Workers’ Compensation Commission is the trier of facts and its orders will be affirmed where there is substantial evidence to sustain its findings, nevertheless, the substantial evidence rule is sufficiently flexible to permit the Court to examine the record as a whole to check for errors.” Universal Mfg. Co. v. Barlow, 260 So.2d 827, 831 (Miss.1972). “Courts have often reversed the Workers’ Compensation Commission when the Commission acted against the great weight of the testimony.” Id. (citing M.T. Reed Constr. Co. v. Garrett, 249 Miss. 892, 164 So.2d 476, 477-78 (1964)).
¶ 28. Here, there is no substantial .evidence that the phone call from the dialysis patient on the morning of March 28, 2000, caused, exacerbated, or aggravated Wool-folk’s aneurysm. There is no credible evidence in the record that Woolfolk suffered any stress or was in any way upset as a result of the phone call. In fact, the testimony of every witness who was working with Woolfolk at the time of the call is contrary to the contention that Woolfolk was upset as a result of the phone call. Shirley Broomfield and Daphne Bryant, the two witnesses who had contact with Woolfolk immediately following the call, testified that Woolfolk did not tell them that she was upset over the phone call nor did she appear to be upset as a result of the phone call.
¶ 29. Furthermore, there is insufficient evidence in the record to support a reasonable inference that the phone call was stressful to Woolfolk. The testimony of each employee of Central Dialysis Center was that patients do occasionally have to be re-dialyzed. Bryant testified that she and Woolfolk discussed the patient’s treatment chart and jointly determined that there was no reason for the patient to come back in that day. Also, Bryant testified that Woolfolk was never upset during Woolfolk’s discussions about the patient coming back for treatment, but was only concerned about whether the patient would actually need to be re-dialyzed. There is no evidence in the record to indicate that Woolfolk’s level of concern rose above that of a nurse for the well-being of her patient. Nothing in the record indicates that Woolfolk considered the phone call from the patient to be an emergency or urgent type of phone call. There is only positive and corroborating testimony of employees of Central Dialysis Center that Woolfolk did not appear to be upset as a result of the phone call.
¶ 30. Even if we were to accept the claimant’s contention that the phone call was stress-inducing, we find no evidence in the record to support the contention that the phone call caused an increase in Wool-folk’s blood pressure or that it was an increase in blood pressure which caused her pre-existing aneurysm to rupture. *1032 While there is ample evidence that Wool-folk’s blood pressure was elevated after the rupture, there is no evidence that Woolfolk’s blood pressure was elevated prior to the rupture. In other words, as Fresenius and Continental contend, there is no evidence to indicate that the elevation in Woolfolk’s blood pressure caused the rupture as opposed to the elevation in blood pressure being a condition of the rupture.
¶ 31. The Mississippi Supreme Court has held that “whenever the expert evidence is conflicting, the court will affirm the Commission whether the award is for or against the claimant.” Int’l Paper Co. v. Greene, 773 So.2d 399, 401(116) (Miss.Ct. App.2000) (citing Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)). “The Commission, as fact finder, is entitled to weigh the competing testimonies and render its decision accordingly, provided that the acceptance of the testimony over that of the other did not result in a decision which was clearly erroneous.” Int’l Paper, 773 So.2d at 402 (citing Baugh v. Central Miss. Planning and Dev. Dist., 740 So.2d 342, 344(¶8) (Miss.Ct.App. 1999)).
1132. In the case at bar, the Commission placed more weight on the testimony of Dr. Stringer than it did on the testimony of Dr. Fisher. That was certainly the Commission’s prerogative. However, as stated earlier in this opinion, Dr. Stringer’s expert opinion was based on the assumption that the phone call from the patient was stress-inducing. There is simply no evidence to support this factual assumption. Dr. Stringer’s opinion was also based on the assumption that the stress from the phone call caused Wool-folk’s elevated blood pressure and that the elevated blood pressure caused Woolfolk’s pre-existing aneurysm to rupture. Again, there is no evidence in the record to support any of these factual assumptions on which Dr. Stringer’s opinion relies. Dr. Stringer admitted in his deposition that he did not know what Woolfolk’s blood pressure was prior to her bleed out. Both experts agreed that by the time emergency personnel arrived at the dialysis center and obtained a reading of Woolfolk’s blood pressure, she had already had her bleed out. It is stipulated in the record that Woolfolk had no recorded medical history of elevated blood pressure.
¶ 33. The Commission noted that “a fair preponderance of the evidence presents, at worst, a doubtful case which [it] was duty bound to resolve in the claimant’s favor.” Big “2” Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss.1980). Were there facts to support the assumptions made by Dr. Stringer which undergird his opinion, we might be inclined to agree with the Commission. However, if the premise upon which Dr. Stringer’s opinion was based is flawed, then it necessarily follows that the opinion is also flawed. Accordingly, we find a lack of substantial evidence to support the finding of the Commission that Woolfolk suffered a compensable work-related injury. Therefore, we reverse and render the decision of the Commission and the judgment of the circuit court affirming it.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY AFFIRMING THE DECISION OF THE WORKERS’ COMPENSATION COMMISSION IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. As will be discussed in greater detail later in this opinion, Stella Woolfolk suffered an aneurysm rupture after receiving a telephone call from a patient of the Central Dialysis Center in Yazoo City, Mississippi where Wool-folk worked. She never recovered, and her son, Glenn Woolfolk, was eventually appointed conservator of her person and estate, and it is he who prosecutes this appeal on behalf of Woolfolk's estate.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. The Mississippi Supreme Court adopted the Daubert standard in Mississippi Transp. Comm’n v. McLemore, 863 So.2d 31, 39(¶ 5) (Miss.2003).

.Daubert, 509 U.S at 597, 113 S.Ct. 2786.