DILLON, et al. *v.* GASOLINE PLANT CONSTRUCTION CORP., et al.

No. 39302 October 25, 1954 75 So. 2d 80

*Travis & Moore,* Jackson, for appellants.

*M. M. Roberts,* Hattiesburg, for appellee.

McGEHEE, C. J.

This is a suit for death benefits under the Workmen's Compensation Act of 1948 and amendments thereto. The

claimants are the appellant Mrs. Ava Johnson Dillon and her minor son William Hamilton Dillon, ten years of age, and who are the sole heirs at law and dependents of Ralph E. Dillon, deceased, who was employed on the date of his death and for about two months prior thereto by the appellee Gasoline Plant Construction Corporation as a painter on a construction job. Ralph E. Dillon died at his home on the night of September 10, 1952, at about 9 o'clock, after having quit work at about 5 o'clock that afternoon. He did not sustain an accident or suffer an injury on the job within the common meaning and acceptation of that term. The theory of the claimants is that the nature and character of the work in which the employee was engaged as a painter, and the number of hours employed in the work for several days prior to his death, was a contributing factor thereto in that he is alleged to have had a pre-existing heart ailment which was aggravated by the nature and character of the work and the hours of labor each day so as to precipitate his sudden death from coronary thrombosis.

In support of this theory the claimants offered the testimony of the appellant Mrs. Dillon and of two co-employees of Mr. Dillon in connection with the fact that he had normally worked 9 hours per day for 5 days in a week, and that these hours were increased during the calendar week preceding his death to 10 hours per day for 5 days and 8 hours on the 6th day. His death occurred on the next Wednesday night following his work at the normal 9 hours per day on Monday, Tuesday and Wednesday of the week of his death.

Mrs. Dillon testified that her husband had complained of pains in his chest and in his arms from time to time during the 10 days immediately preceding the death and had stated to her that he was tired and would have to quit work and take a rest unless they soon completed the job on which he was engaged; that he made such a complaint after he returned home on the evening of

September 10th and that after eating his supper he decided to remain at home and read the newspaper instead of accompanying her and their son on a trip of 5 or 6 miles to town and to the picture show that evening.

Mr. McKenzie, a coemployee, heard Mr. Dillon say about an hour before he quit work that afternoon that he "was tired out." He also admitted that a painter had to bend his body and stretch his arms when painting.

Mr. Trusty, a coemployee who lived 3 or 4 miles from the home of Mr. Dillon, testified that they had an arrangement whereby they would drive 28 miles to the place of their employment in the car of Mr. Dillon one day and in the car of the witness the next day, and that Mr. Dillon used his car in going to and from their work on September 10th, and that he was jolly, in a good humor and apparently in good health en route home that afternoon. But that he had heard him say something that day about "he was going to have to quit smoking cigarettes" on account of a tight feeling in his chest; that this occurred during the forenoon of that day and that he had made statements to that effect on prior occasions; and that he had thrown his cigarettes away.

The testimony on behalf of the claimants also established the well-known fact that it is necessary for a painter to bend his body and stretch his arms in painting and to stoop when applying paint underneath pipes and other surfaces on the job, and also that steady manual labor will cause the arms of a painter and other workmen to ache, but it was for the determination of the attorney-referee and the Workmen's Compensation Commission as to whether or not wielding a paint brush for 9 or 10 hours per day with one hour out for lunch would constitute an unusual exertion or strain. Naturally a painter would get tired, and this is true of most anyone who really works. The question after all is whether or not his work was so burdensome as to

bring about or contribute to his death from coronary thrombosis or some other unknown cause about 4 hours after he had left the job.

The claimants introduced as a witness a local physician, who had been summoned to the home upon the return of the appellants from the picture show, and who found Mr. Dillon dead on the floor of the front porch by his chair when the physician arrived. The proof also disclosed that the employee had been on the bed undressed and that his newspaper was on the floor beside the bed. The physician stated in the death certificate as the cause of death "suspected coronary thrombosis." He testified that the employee entered his hospital on November 10, 1951, complaining of chest pain and was kept there for observation and examination until the next day when an electrocardiogram was made, and which was interpreted as showing no evidence of heart disease and that the patient was informed of this fact. He was again in the hospital on the 25th of February and was again complaining of chest pain and was examined by another physician at the hospital on February 27, 1952, who found him to be suffering from pains in his back, and there was some lay testimony that he was also found to have had indigestion at that time, but the physician who testified did not see the patient again until after his death. This witness testified that he didn't consider "being tired" a symptom of acute thrombosis, or occlusion, saying "I don't think of fatigue or being tired as being a symptom of heart disease."

In regard to the death certificate the physician who was called to the home on the night of September 10th and who signed the certificate, stated in answer to a hypothetical question in regard thereto that "I want to make it clear as to the form, on my death certificate, that I didn't make a positive diagnosis of coronary thrombosis, and I don't know now beyond doubt it was the cause of his death." He further stated that "In a

person who has a setup for development of a thrombosis, any intense exertion prior to the development would be a predisposing cause;'' that he didn't rule out other causes than heart trouble as being the cause of death in this instance; and that he didn't know the cause of his death but that *if he had a coronary disease,* and the witness had known it, he would have told him not to work, if he had been asked whether he should or not.

A neighbor, who said that she lived in talking distance of Mrs. Dillon, testified that she had a conversation with the latter at the home of the employee immediately following his death, and that Mrs. Dillon told her that ''he ate a good supper'', and the witness was asked whether Mrs. Dillon said anything to her about the condition of her husband when he started to work that morning, and the witness replied, ''Yes, sir. She said he patted himself on the chest and said he thought the hurting was coming back in his chest and she said she told him he was smoking too many cigarettes and drinking too much coffee.'' This witness further testified that Mrs. Dillon said her husband ''seemed to be perfectly all right and he ate a hearty supper and the little boy wanted to go to the show. She said he told her to take him, he wanted to read the paper. Said he didn't complain of being sick.'' However, this witness further stated that people began coming in and that she didn't ask her any more; that she ''just asked had he been sick and she said no, and that's all.''

The claimants introduced a heart specialist who testified in substance that there was probably a causal connection between the employee's death and the number of hours worked and the emotional strain from trying to finish the job by Friday of that week. This was in response to a hypothetical question which assumed that, in addition to the nature and character of the work and the hours of labor per day, he was under an emotional strain on account of the hurry to get the job completed

by Friday of that week, but there was no proof that anyone had told the men to hurry, but only that the superintendent in response to an inquiry as to when the job might be completed had said something to the effect that he would like to get through by Friday. All of the employees who testified related the fact to be that the men were all anxious to get through by Friday, some of them wanting to go fishing and others wanting to just take a vacation. There was no direct proof that this employee was under an emotional strain, or that he sustained an accident or suffered an injury while traveling to or from his work and either while at work or on the premises of his employer; and there was no proof except what may have been inferred or not from the circumstances hereinbefore stated that this employee had a pre-existing heart disease.

 The heart specialist introduced by the appellees testified, in substance, that in his opinion there is no causal connection between physical labor and a heart attack, but that heart attacks are caused by mental or emotional strain, a sense of responsibility and anxiety, and that deaths from this cause are confined largely to business and professional men rather than to manual laborers. He conceded that the hours of work and emotional strain would probably affect an existing heart trouble. But be that as it may, it was for the Commission to determine from all of the testimony of both the lay and expert witnesses as to whether or not the claimants had met the burden of showing by a preponderance of the evidence that there was a causal connection between the work of the employee and his sudden death, and in this the claimants were unaided by the presumption involved in the case of Pearson v. Dixie Electric Power Assn., 219 Miss. 884, 70 So. 2d 6, where the employee died on the premises of the employer where he had been at work about 15 minutes before his death, and where a pre-existing heart ailment was clearly shown by the testimony of the employ-

er itself. Moreover, the Court said in that case that: "It could reasonably have been inferred that something occurred to render it necessary for him to cease work and go lie down in the shade where he died within a few minutes after quitting work."

██ ██ In view of the conflict in the evidence we are not justified under all of the facts and circumstances in this case in substituting our judgment in the place and stead of that of the attorney-referee, full commission and the circuit court. We also think that the case is distinguishable on its facts from the cases of Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356, and LaDew v. LaBorde, 216 Miss. 598, 63 So. 2d 56, where the accident or injury was sustained in each instance while the employee was at work on the job. We are not justified in extending the rule of liberal construction in favor of the employee much farther, if at all, than was done in the Cowart and Pearson cases, as would be necessary for us to do in order to reverse the finding of the attorney-referee, full commission and the circuit court in the instant case.

Moreover, the Court stated in the Cowart case that "The sole question presented to the attorney-referee and the commission for decision was whether or not the death of the employee was caused from an injury arising out of and in the course of her employment, whereas the sole question presented to us for decision as an appellate court is whether or not there was such substantial conflict in the testimony as to afford the attorney-referee and commission a reasonable basis for the denial of the claim as the triers of fact."

██ ██ In view of the facts and circumstances hereinbefore stated, we do not feel justified in holding that the decision appealed from wherein both the attorney-referee, the full commission and the circuit court denied an award of compensation, is manifestly wrong as being against the overwhelming weight of the evidence. If the commission had found as a fact that the employee

in this case did actually have a pre-existing heart trouble or disease, and that the same was aggravated or accelerated by his work so as to be a contributing factor in the cause of his death, the appellants would be in a more favorable position in urging the court here to hold the claim to be compensable under the Workmen's Compensation law, but they are confronted with an adverse finding of the attorney-referee and of the full commission, which was affirmed by the circuit court, as aforesaid, and we are not justified in substituting here an opinion contrary to that finding of the triers of the facts.

 Finally, it is urged that we should in any event reverse and remand the case because of the alleged error of the attorney-referee in not permitting the claimants to prove the medical or family history of the employee as related to heart disease, since the heart specialists raised this question in their testimony and stated in effect that such history would be important in determining whether or not a pre-existing heart ailment may have caused his death in that it would probably have been aggravated by the employee's work or the assumed emotional strain. However, the claimants did not dictate into the record what particular facts they were offering to prove in regard to his medical or family history as related to heart disease so as to enable us to determine whether or not such family history would have had a bearing on the question at issue or whether the facts relied upon were too remote to be material, and the case should, therefore, not be reversed and remanded because of the alleged error complained of.

The case has been well briefed on both the law and the facts and after a careful study of the facts and a review of our previous decisions we are of the opinion that the judgment appealed from should be affirmed. For that reason we do not reach a consideration of the motion of the appellees, Gasoline Plant Construction

Corporation and Houston Fire & Casualty Company, to dismiss this appeal, regardless of how meritorious the same may be, since the same result is achieved so far as the appellees are concerned by our decision of affirmance.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.