749 So.2d 1201 (1999)
REDMAN HOMES, INC. and the Insurance Company of the State of Pennsylvania, Appellants,
v.
DEPENDENTS OF Thomas E. BENNINGTON, Sr., Deceased, Appellees.
No. 1998-WC-01207-COA.
Court of Appeals of Mississippi.
September 7, 1999.
Thomas E. Vaughn, Austin R. Nimocks, Gulfport, Attorneys for Appellants.
Donald C. Dornan, Jr., Biloxi, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. The employer and its insurance carrier appeal from the decision of the Harrison *1202 County Circuit Court reversing the decision of the Workers' Compensation Commission. The circuit court awarded benefits to the dependents of Thomas E. Bennington, Sr., who suffered a fatal heart attack shortly after leaving a New Year's Eve party. The employer contends that there was substantial evidence supporting the Commission's determination that Mr. Bennington's heart attack did not result from job-related stress but rather was inevitable due to the severe coronary artery disease from which he suffered. We agree with the employer that this was simply a fact issue, within the discretion of the Commission to resolve. We reverse and reinstate the order of the Commission.

FACTS
¶ 2. Forty-three-year old Thomas Bennington was employed as a production worker in the sidewall department of Redman Homes, Inc, a mobile home manufacturer. Essentially, he worked on an assembly line constructing walls of mobile homes. On September 9, 1994, he suffered an injury when a seven-inch wooden stake went through his hand and wrist. The stake was surgically removed and Mr. Bennington returned to work sixteen days later. On December 16, Mr. Bennington suffered another injury, this time a laceration to his thumb. The wound was sutured and he returned to work within three days.
¶ 3. Mr. Bennington continued to experience pain with both wounds. He received additional treatment for his thumb wound which had reopened. Because the wound was healing poorly, he ultimately had the stitches removed and replaced. He was given a splint which was to reduce pain in his thumb while he worked. As for his hand and wrist, he continued to suffer from a "pins and needles" sensation and other discomfort. Belinda Bennington testified that her husband feared he might require additional surgery on his hand and wrist. On December 5, 1994, Mr. Bennington was fitted with a wrist brace and advised to return in one month.
¶ 4. Before that occurred, Mr. Bennington and his wife attended a New Year's Eve party at a friend's home. Mr. Bennington complained that he was not feeling well and the couple returned home. After showering, he sat down on his bed and suffered a fatal heart attack. An autopsy revealed that Mr. Bennington suffered an acute myocardial infarction, or simply stated, a heart attack, due to or as a consequence of arteriosclerotic cardiovascular disease. There was also evidence of a prior, likely unknown, myocardial infarction. At the time of the autopsy, Mr. Bennington's coronary arteries were approximately ninety-percent blocked.
¶ 5. Mr. Bennington's dependents filed their petition to controvert with the Commission on November 27, 1995, contending that the heart attack resulted from the physical pain and emotional stress associated with the two work-related injuries. The employer responded that Mr. Bennington's coronary artery disease, not stress, caused the heart attack. On September 15, 1997, the administrative law judge entered an order finding that there was no causal connection between Mr. Bennington's job-related stress and the heart attack. The claimants appealed to the Commission which affirmed the findings of the administrative law judge. The Harrison County Circuit Court reversed. The circuit judge held that the decision of the Commission was not supported by substantial credible evidence and awarded death benefits to Mr. Bennington's wife and son.

DISCUSSION
¶ 6. The sole issue raised by the employer on this appeal is whether there was substantial credible evidence to support the Workers' Compensation Commission's decision. The Commission is the trier and finder of facts in a compensation claim. Inman v. Coca-Cola/Dr.Pepper Bottling Co., 678 So.2d 992, 993 (Miss. *1203 1996). Judicial review is to focus on whether the findings of fact are supported by substantial evidence and whether the proper legal standard was applied. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1021-22 (Miss.1990). Regardless of what the circuit court concluded, if the case is further appealed here our task is again to review the Commission's decision for its validity.
¶ 7. In reversing the Commission's order, the circuit court noted that there was expert medical testimony that claimed a causal connection between the stress associated with Mr. Bennington's work-related injuries and the heart attack. The circuit court relied upon two cases in which benefits were awarded under similar circumstances. In one case, the claimant sustained burns on his left leg at work. Harper Foundry and Machine Co. v. Harper, 232 Miss. 873, 875-76, 100 So.2d 779 (1958). Several days later, while waiting to undergo a skin graft, he suffered a heart attack. One expert attributed the heart attack to the nervous stress occasioned by the anticipated skin graft and future treatment of the burn. Another physician testified that although the burn was not the direct cause of the heart attack, it could have contributed to its onset. Id. at 780. The supreme court found that the claimant did establish a causal relationship between the burn and the heart attack. In affirming the Commission, the court explained that "no decided conflict in the medical opinions existed," but had there been such a conflict it was for the Commission to resolve. Id. at 781.
¶ 8. In the second case, the claimant suffered a heart attack that she claimed resulted from the stress and strain of her job. Insurance Dept. of Miss. v. Dinsmore, 233 Miss. 569, 574-75, 102 So.2d 691, 692 (1958). The claimant suffered from hypertension and cardiovascular disease, prompting the employer to argue that "the relentless and inexorable march of a disease or condition of life is not a compensable injury arising out of and in the course of employment simply because the disability manifested itself during a period of employment." Id. at 693. One expert expressed the opinion that there was no causal connection between the heart attack and the claimant's employment. However, he did admit that hypertension could possibly be a contributing factor in the end result of the attack. The claimant's experts testified that tension and job-related strain contributed to the hypertension, which was one factor in the production of the heart attack. In affirming the Commission's award of benefits, the court held that "it is sufficient as a basis for compensation that the work is a contributing cause. It need not be the sole or even the primary cause of resulting disability or death, but if a substantial contributing causal connection is found, the claim is fully compensable...." Id. at 694.
¶ 9. In both precedents, the supreme court affirmed an order of the Commission finding that there was substantial evidence of a causal connection between the stress and the heart attacks. In the present case, the circuit court was to determine whether there was substantial evidence that there was no causal connection. As one commentator has explained:
Since the conflict in medical viewpoint is often related to generally conflicting theories or "schools" of medical thought on the subject of causal connection, rather than to the peculiar facts of the particular case, the rule has plagued the court with contradictions. Thus, it will be noted that the issue of causal connection may arise in two cases which present substantially the same facts and the same typical conflict in medical opinion, and the commission may reach opposite results by adopting one school of medical thought in one case and the opposite school in the other. Under the prevailing rule, the decision in both cases, although contradictory, must be affirmed.
DUNN, MISSISSIPPI WORKMEN'S COMPENSATION, § 97 (3d ed.1990).
*1204 ¶ 10. The evidence in the present case consisted of the testimony of the deceased's wife, Belinda Bennington, Dr. Edward S. Hyman, and Dr. Paul Mullen. Neither physician treated Mr. Bennington. Mrs. Bennington testified that her husband was under considerable strain resulting from the work-related injuries. She stated that Mr. Bennington suffered pain from both injuries up until his death. The thumb injury was particularly stressful because the stitches had to be removed, the wound scraped and restitched. Mrs. Bennington testified that her husband described the process as "extremely painful." Mr. Bennington also worried about losing his job because the injuries made it difficult to perform his duties. Mrs. Bennington testified that following her husband's second injury, she and Mr. Bennington overheard a conversation in which a supervisor expressed his desire to fire Mr. Bennington because of poor job performance. According to Mrs. Bennington, a second supervisor stated that he would not let that happen. Mrs. Bennington stated that her husband was worried about losing his job due in large part to his inability to "keep up the pace" because of his injuries.
¶ 11. Dr. Edward S. Hyman, a specialist in internal medicine, testified on behalf of the claimants. He stated that although he is not a cardiologist, he has treated many patients who suffer from cardiovascular disease. Dr. Hyman testified that in his opinion, there was a cause and effect relationship between the stress and the fact that Mr. Bennington developed a clot in his diseased artery which led to the heart attack. Dr. Hyman explained that he believes that stress accelerates the clotting mechanism in the blood. He went on to state that the myocardial infarction was aggravated and precipitated by the stress related to Mr. Bennington's employment. Dr. Hyman admitted that it is more likely that a clot will form in a diseased artery than a healthy one. When asked to assign a percentage of the heart attack for which stress was responsible, Dr. Hyman stated that stress contributed about eighty or ninety percent to the formation of the clot which led to the heart attack. Finally, Dr. Hyman testified that Mr. Bennington would eventually have suffered a heart attack; however, it might have been another ten years before it occurred.
¶ 12. Dr. Paul Mullen, a cardiologist, testified as the expert witness for the employer. He stated that given the progression of the cardiovascular disease, it had likely been developing for approximately twenty years. In his opinion, the two work-related injuries did not contribute to Mr. Bennington's myocardial infarction. Dr. Mullen testified to a reasonable degree of medical probability that the natural progression of the coronary artery disease caused the fatal heart attack. Dr. Mullen did recognize that there are two schools of thought regarding the relationship between stress and heart attack. He admitted that catastrophic stress can cause sudden death in patients predisposed to a heart attack because of underlying coronary artery disease. Dr. Mullen further admitted that it is possible that something less than catastrophic stress might have the same effect. When asked to assume that stress was at least in part responsible for the heart attack, Dr. Mullen testified that it would be ten-percent responsible while the cardiovascular disease would be ninety-percent responsible.
¶ 13. The conflict in the testimony made an issue for the Commission as the trier of the facts. In heart attack cases such as this, the factual issue of causal relationship is usually one for the medical experts and the triers of the facts. Mississippi Research and Development Center v. Dependents of Shults, 287 So.2d 273, 276 (Miss.1973). Where the medical evidence in a heart case is conflicting, the court will affirm the Commission whether the award is for or against the claimant. Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 269 (Miss.1966). The Commission obviously found the testimony of Dr. Mullen, a cardiologist, more credible *1205 than that of Dr. Hyman, an internist, who admittedly had never even performed a cardiac catheterization.
¶ 14. Because we are reinstating the order of the Commission denying benefits, we need not address the issue of apportionment. Apportionment may only be considered after the claimant has met its burden of establishing a causal connection between an injury and a resulting disability. DUNN, MISSISSIPPI WORKMEN'S COMPENSATION § 55 (3d ed.1990). The Commission found that the claimants failed to do so in the present case. Therefore, there is no need to consider a reduction in benefits.
¶ 15. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND THE ORDER OF THE WORKERS' COMPENSATION COMMISSION REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING, P.J., IRVING, AND MOORE, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE OPINION, JOINED BY BRIDGES, DIAZ AND LEE, JJ.
THOMAS, J., NOT PARTICIPATING.
PAYNE, J., dissenting:
¶ 16. I respectfully dissent. I would affirm the circuit court's award of benefits, but remand for an apportionment based on Bennington's pre-existing heart disease. I am aware of our limited standard of review in administrative cases; however, the beneficent and humane purposes of the worker's compensation statute are deeply rooted in Mississippi jurisprudence. Where there is a doubt as to whether benefits should be awarded, the statute must be liberally construed to allow for an award of benefits. Marshall Durbin Cos. v. Warren, 633 So.2d 1006, 1010 (Miss. 1994). I write separately not only because I disagree with the majority's resolution of this case but also to highlight what appears to be an inconsistent trend in the law that has developed over the years, and continues its divergence today, with regard to workers' compensation benefits as applicable to cases involving an employee's work-related cardiac failure. Justice Brady recognized this difficulty some thirty years ago:
Heart failures, attacks and diseases have presented unique and most difficult problems under the Mississippi Workmen's Compensation Act. Just as the rainbow embodies in its spectrum all colors, so have the Workmen's Compensation Commission and this Court utilized all legal strategies in determining the compensability or non-compensability of claims relating to heart maladies. An objective, invariable and just yardstick or criterion of determiners relating to heart cases appears to be impossible of realization. In our effort to find the pot of gold called justice at the foot of the rainbow thus it is under remarkably similar factual circumstances that the orders of the commission as affirmed or reversed by this Court vary like the rainbow's colors from red to violet. The legislative process affords probably the only solution to this confounding problem, since it is not within the province of the judiciary to legislate.
Leake County Coop. & Michigan Mut. Liab. Co. v. Dependents of Barrett, 226 So.2d 608, 613 (Miss.1969). As Justice Brady accurately opined, our heart cases do present a broad array of dispositions both in favor of the worker and dependents and in favor of the employers/carriers. I agree that a single objective measure to be utilized in the disposition of such cases is beyond the grasp of common law but will require legislative action. However, I believe it vital that this Court begin down the road of attempting to blend some of these various colors of this vast array of competing dispositions of heart cases into a body of law that is somewhat more consistent in application than what we now have. While the legislature *1206 desperately needs to address this issue, we must presently rely on our precedents to fashion appropriate remedies.
¶ 17. In looking at some of the cases in this area, the rainbow of which Justice Brady spoke is readily apparent. In Railway Express Agency, Inc. v. Hollingsworth, et al., 221 Miss. 688, 74 So.2d 754 (1954), death benefits were denied to the widow by the referee, awarded by the Commission and the circuit court, and the supreme court affirmed the award. In that case, there were two competing expert witnesses "one of whom gave it as his opinion that the emotional strain and the physical stress of the employee's work directly contributed to the attack and consequent death, the other maintaining that there was no causal connection between the work and the heart attack." Id. at 755. Only three weeks after Hollingsworth, the supreme court decided Dillon et al. v. Gasoline Plant Const. Corp., 222 Miss. 10, 75 So.2d 80 (1954). In Dillon, the decedent was a painter and died at his home some four hours after he finished work for the day. The referee, the Commission, and the circuit court all denied death benefits to the dependents. Id. at 19, 75 So.2d at 83. In that case, there, too, were competing opinions of two qualified experts. For the claimants, a heart specialist testified that:
there was probably a causal connection between the employee's death and the number of hours worked and the emotional strain from trying to finish the job by Friday of that week. This was in response to a hypothetical question which assumed that, in addition to the nature and character of the work and the hours of labor per day, he was under an emotional strain on account of the hurry to get the job completed by Friday of that week, but there was no proof that anyone had told the men to hurry, but only that the superintendent in response to an inquiry as to when the job might be completed had said something to the effect that he would like to get through by Friday.
Id. at 17, 75 So.2d at 82. Further, the widow testified that the decedent was hurting in his chest and arms in the days preceding the fatal infarction. Id. at 14, 75 So.2d at 81. The divergence in these two cases appears to be demonstrative of the manner in which cardiac cases have been dealt with in Mississippi.
¶ 18. In the case sub judice, the circuit court was correct in reversing the Workers' Compensation Commission's decision to deny death benefits to Bennington's dependents. There simply was not, as the majority has found, substantial and credible evidence supporting the Commission's decision. The decedent died from an acute myocardial infarction caused by arteriosclerotic cardiovascular disease. There were also signs of a previous myocardial infarction which damaged the heart muscle but which was apparently unknown to the decedent. The autopsy conducted on Bennington revealed a recent thrombotic event, or blood clot, in a major artery, which was capable of fatal result with or without the severe cardiovascular disease suffered by Bennington. Both testifying physicians acknowledged the role of clotting in heart attacks. Their disagreement came over the role that mental and emotional stress plays in causing the blood to clot.
¶ 19. It seems to me the pivotal issue then became whether the evidence of the thrombotic event that precipitated the decedent's fatal myocardial infraction was caused by his work-related stress. I think it reasonable to say that the actual work-related injuries suffered by Bennington did not themselves cause the fatal infarction. However, the stress suffered by Bennington from pain related to both injuries and not being able to perform his work because of the injuries coupled with the mental and emotional strain of learning that his employment was in jeopardy because of his inability to temporarily maintain his level of performance arguably led to the thrombotic event that caused his *1207 ultimate death. The administrative law judge all but dismissed the evidence of the thrombotic event and its relationship to the decedent's stress in her order denying benefits to Bennington's two dependents, simply finding that the two injuries themselves and the associated stress did not lead to the fatal infarction.
¶ 20. Two competent physicians testified with regard to the factors contributing to the untimely demise of Bennington. Dr. Edward Hyman, board certified in internal medicine and a practicing physician for over four decades, testified regarding the effects of mental stress and the acceleration of the clotting mechanisms of the blood. Hyman maintained that medical science supports a cause and effect relationship between mental stress and accelerated blood clotting. Hyman maintained that the nature of Bennington's work, carpentry, and the injuries to his thumb and wrist, plus the facts he learned in the conversation he overheard between his foreman and the production manager regarding his losing his job, resulted in job-related stress that precipitated the thrombotic event resulting in Bennington death.
¶ 21. The employer/carrier expert, Dr. Paul Mullen, expressed his opinion that Bennington's progressive and severe heart disease was the cause of his unfortunate demise. Mullen stated that neither of the injuries to Bennington's wrist and thumb caused the fatal myocardial infarction. Mullen acknowledged that there are two different schools regarding the relationship of stress and heart attack, and Mullen admitted that he does not believe that there is such a causal connection. But, importantly, Mullen admitted that the information about Bennington's concern over losing his job played no role in his finding that stress did not contribute to Bennington's death. Further, Mullen acknowledged that medical research supported the proposition that catastrophic stress can cause acute myocardial infarction in those predisposed to such, as was Bennington. Further, when asked whether less than catastrophic stress, more than ordinary stress, can be a precipitating factor in acute myocardial infarction, Mullen responded in the affirmative that it was possible.
¶ 22. Thus, the administrative judge and Commission were left with the testimony of two competent physicians that stress can be a precipitating factor in myocardial infarction. There was testimony from Bennington's widow about the severe pain suffered by Bennington flowing from the injuries he suffered, and about his distress over learning that he may be dismissed from his employment because of his inability to maintain the necessary pace because of his work-related injuries to his arm and wrist. Further, Dr. Mullen did not consider the stress suffered by Bennington over learning that his job was in jeopardy in formulating his opinion that stress was not a cause of the fatal heart attack.
¶ 23. Given the fact that both experts testified that stress can be an aggravating factor in myocardial infraction and that one expert admittedly did not consider all of the stressors that affected Bennington according to the lay testimony of his widow, there simply was not substantial and credible evidence presented sufficient to support a total denial of benefits.
¶ 24. However, while I believe that an award was warranted, I likewise believe that apportionment is required in light of Bennington's pre-existing arteriosclerotic cardiovascular disease. Apportionment of benefits are controlled by Miss.Code Ann. § 71-3-7 (Rev.1995), which provides in pertinent part:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
*1208 Miss.Code Ann. § 71-3-7 (Rev.1995). Apportionment is a fact question for the Commission and is often not subject to exact mathematical calculation. Mitchell Buick, Pontiac, and Equipment Co. v. Cash, 592 So.2d 978, 982 (Miss.1991). Often, the degree of apportionment is left to the discretion of the Commission. Id.
¶ 25. In this case, we have testimony from both experts as to the amount of apportionment based on assumptions that the stress suffered by Bennington contributed to the thrombotic event that led to the fatal myocardial infarction. Dr. Hyman testified that he would attribute the pre-existing heart disease as a less than fifty percent cause of the fatal attack and the primary cause of the final infarction to the job-related stress suffered by Bennington. Dr. Mullen maintained that he would attribute the pre-existing heart disease as ninety percent of the cause of the fatal heart attack, with ten percent attributable to other factors, such as the stress. As pointed out above, the degree of apportionment is left by and large to the discretion of the Commission. Based on the existing evidence, the Commission can make a determination as to the appropriate amount of apportionment.
¶ 26. I respectfully dissent.
BRIDGES, DIAZ, AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.