BRIDGES, J.,
for the Court.
¶ 1. On October 26, 2000, an administrative judge, held that Troy Pickens proved that he sustained a work related injury. The administrative judge relied on the medical expert testimony of Dr. Thomas Shands and Dr. Kenneth Bennett as well as the lay testimony of Pickens and Pick-ens’s supervisor, Lt. Col. Jim Boxx. Further, the administrative judge decided that Pickens’s benefits for permanent disability should be apportioned by 50% in accordance with Mississippi Code Annotated section 71-3-7 (Rev.2000), as at least 50% of his injury was concluded to be due to non-work related factors. The Mississippi Department of Public Safety, Pickens’s employer, petitioned the Full Commission of the Workers’ Compensation Commission for review of the decision made by the administrative judge. After a hearing, the Full Commission affirmed the administra *1059 tive judge’s decision. The Mississippi Department of Public Safety appealed to the Circuit Court of Union County and after oral arguments, the circuit court affirmed the order of the Full Commission, holding that its decision was based on substantial evidence. While the appellant does not separate the issues in his brief, the appel-lee does so. We find that it is easier to understand the issues by separating them, therefore, we follow the appellee’s form in his brief.
STATEMENT OF THE ISSUES
I. WHETHER THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION HAD A SUBSTANTIAL BASIS FOR ITS FINDING THAT TROY PICKENS IS ENTITLED TO WORKERS’ COMPENSATION BENEFITS IN THE AMOUNT CALCULATED BY THE FULL COMMISSION.
A. WHETHER THE COMMISSION ERRED IN APPORTIONING PICK-ENS’S BENEFITS BY FIFTY PERCENT.
B. WHETHER THE COMMISSION ERRED IN REFUSING TO COUNT PICKENS’S RETIREMENT INCOME IN THE WAGE-EARNING CAPACITY ANALYSIS.
FACTS
¶ 2. Troy Pickens began work with the Mississippi Highway Patrol in 1973 as a trooper. In 1987, Pickens accepted a position as an investigator in the Criminal Bureau which he held until 1993 when he accepted a promotion to Lieutenant Senior Investigator, with supervisory responsibilities over four men.
¶ 3. In additional to general supervisory tasks, Pickens, as Lieutenant Senior Investigator, was responsible for a variety of investigative tasks such as the collection of his men’s hours, reviewing case reports, organizing salvage vehicle inspection, answering complaints, organizing court appearances for those in his charge, coordinating with prosecuting attorneys, and initiating his own cases. Additionally, Pickens was responsible for nine Northeastern Mississippi counties. Pickens testified, without contradiction, that he worked on average, 12-14 hours a day, leading up to 90-100 hours per week. Pickens also wore a pager, was continually on call 24 hours a day, and was in fact frequently paged during all hours of the day and night. Pickens’s supervisor admitted that Pickens’s job often subjected him to high level of stress. In an attempt to reduce his stress levels, Pickens often requested more manpower, but every time, these requests were denied.
¶ 4. In or around January or February of 1995, Pickens began and ultimately completed a rigorous training program at the United States Marine Base in Quantico, Virginia. During this time, Pickens was often subjected to physical tests as well as blood tests, none of which revealed high blood pressure, diabetes, or cholesterol problems.
¶ 5. On March 30,1996, Pickens suffered a myocardial infarction episode. After medical examinations, he was diagnosed with a 90% blockage to a heart artery, and his under went a bypass operation on April 3, 1996. After his surgery, Pickens tried to return to work, however, later that same year, in November, he suffered a heart attack. Based on conversations with Pickens, his physicians advised him to either change to a less stressful job or die. Taking the advise of his physicians, Pick-ens retired from the Mississippi Highway Patrol on April 30, 1997. At the time of his retirement, Pickens earned an annual salary of $42,000, or approximately $800 per week. After his retirement, Pickens accepted a low stress position as an inves *1060 tigator with the Union County Sheriffs Department and earns an annual salary of approximately $24,000, or $460 per week.
ANALYSIS
I. WHETHER THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION HAD A SUBSTANTIAL BASIS FOR ITS FINDING THAT TROY PICKENS IS ENTITLED TO WORKERS’ COMPENSATION BENEFITS IN THE AMOUNT CALCULATED BY THE FULL COMMISSION.
¶ 6. In this appeal by the employer, the sole issue is whether there was substantial credible evidence to support the Workers’ Compensation Commission’s decision. “The Commission is the trier and finder of facts in a compensation claim. Judicial review is to focus on whether the findings of fact are supported by substantial evidence and whether the proper legal standard was applied. Regardless of what the circuit court concluded, if the case is further appealed here, our task is again to review the Commission’s decision for its validity.” Redman Homes, Inc. v. Bennington, 749 So.2d 1201, 1202-03(¶ 6) (Miss.1999).
¶ 7. With our standard of review settled, we examine the record. Pickens testified that he had many responsibilities relative to his former job and that he worked twenty-four hours a day, seven days a week. He testified to the Commission that Dr. Thomas Andrew Shands was his primary treating physician for the resolution of his heart related injuries and/or disease. He admitted that he never complained to his superior, Lt. Colonel Boxx, regarding the stress that he felt he was suffering on the job. Pickens testified that he smoked a pack to one and a half packs of cigarettes per day in the past. Pickens is currently a diabetic and suffers from high blood pressure and has a family history of heart disease. As to case reports, confidential in nature but relative to the March 1996 activities of Pickens, it is noted that in the five months preceding his onset of heart disease, Pickens was a case agent and worked on approximately four cases. Pickens also offered the testimony of his wife, Linda Pickens, and it was stipulated that this would be cumulative and corpora-tive in nature to Pickens testimony in all regards.
¶ 8. Lt. Col. Jim Boxx, the Director of Criminal Investigations for the Mississippi Highway Patrol, also testified before the administrative judge. He testified that in the six months prior to Pickens alleged initial injury, which was reported to have occurred on March 31, 1996, there were approximately sixty-one active files, five of which Pickens either had supervision and/or assistance in, and of the remaining fifty-six there were only six cases where Pickens’s name was even mentioned.
¶ 9. The deposition of Dr. Thomas Andrew Shands, a board certified internal and geriatric medicine specialist located in New Albany, Mississippi, was entered into evidence at the hearing. He noted that he reviewed all records of Pickens, beginning with his onset of heart-related problems and/or disease which occurred on March 31, 1996. He also reviewed the records of the Baptist Hospital in New Albany, the hospital in Tupelo and the medical records of Drs. Boland, Woody and Creekmore. Drs. Boland and Woody were Pickens treating cardiologists prior to his presentation to Dr. Shands. Dr. Shands stated that Pickens “has been under a significant amount of stress with this job for a long period of time in his capacity, and that was probably the thing that was maybe different from his history than maybe some of the other patients I see with similar risk *1061 factors.[1] He had an unusual amount of history of stress in his job.” Dr. Shands opined that stress was a major risk factor for this individual because of the unusual degree of stress lasting over a long period of time. Dr. Shands also opined that to a reasonable degree of medical certainty, there was a causal connection between Pickens work, his heart-related problems and his job as an investigator with the Mississippi Highway Patrol that put him at an increased risk for such aliments. Also, to a reasonable degree of certainty and compatible with the latest scientific material available on the subject, Dr. Shands opined that stress could be and often is a major factor in heart disease and/or heart attacks.
¶ 10. Dr. Shands went on to explain that his first presentation with Pickens was on April 18, 1998, approximately two years after the March 1996 episode. A second and third visit occurred on May 15, 1998 and June 23, 1998, respectively, and Dr. Shands reported that Pickens was stable and his medications were monitored. However, on August 28, 1998, Pickens complained about chest pains and reported difficulty at work. Stress was discussed at that time. Pickens was then working for the Union County Sheriffs Department and retirement from that position was discussed.
¶ 11. Dr. Shands also admitted that obesity on the part of Pickens was an additional detrimental factor. In 1996, Dr. Shands noted that Pickens did not have a heart attack prior to the procedure but came close to a myocardial infarction. As regards to stress as a factor, he stated, “I think, the thing that really is bad for him, in regards to the stress, was not only the stress itself as an independent risk factor, but the fact ... and as you mentioned, he has the other risk factors, but the effect that his stressful lifestyle had on his other risk factors.” He concluded by relating that the risk factors other than the stress were indeed significant to one degree or another, but that he could not opine as to the percentage attached to the stress factor alone when juxtaposed with the other factors present.
¶ 12. Along with Dr. Shands, the deposition of Dr. Kenneth Bennett, a board certified cardiologist, was introduced at the hearing. Dr. Bennett stated that he had never personally met Pickens nor interviewed and/or examined him. He reviewed Pickens’s deposition and the records relative to Dr. Shands treatment of Pickens. He felt that Dr. Shands was generally accurate in what he said and his narrative given. Dr. Bennett testified that “Pickens has all of the major risk factors associated with and known for contributing to the development of atherosclerotic heart disease.”
¶ 13. He also agreed that he was not Pickens’s treating physician in any manner but felt that stress as a factor here would be a minimal contributor only, and he could not opine as to the percentage that would entail. However, he concluded that stress can be a major contributing factor in coronary disease in some cases and as to Pickens, he can’t eliminate stress as a factor but in his opinion stress was a minor one.
¶ 14. Also introduced into evidence was the magazine The Mississippi Trooper Magazine, issue of Spring 1999. This is *1062 sue had the Mississippi Highway Patrol’s SWAT team on its’ cover, and contained the article “Mental Stress, Is It a Significant Coronary Risk Factor?” The article noted that in situations where individuals had significantly lessened their everyday mental stress levels, researchers found a thirty-nine percent to fifty percent reduction in second heart attacks and death. It also noted that the reasons for stress being a factor in coronary disease and the-neurochemical changes associated with stress and depression accelerate the formation of the plaque that narrows coronary arteries. These same chemical abnormalities cause more blood vessel spasm on top of that plaque, and then accelerate clotting to finish closure of the heart arteries., The same stress chemicals also increase likelihood of normal heart rhythms.
¶ 15. In reference to the article, Dr. Shands noted that Pickens was not on the SWAT team as depicted on the front photo. However, he thought that stress maybe more about how a person reacts to the situation than actually the job itself. Basically, he was describing Pickens’s situation as an overall global type stress. Dr. Bennett indicated that he had reviewed the article in question and felt it was a fairly accurate general article and agreed that the statement “stress reduction is often the most neglective of preventative cardiology programs both by the patient and by the physician” is probably true. He also testified that stress is extremely difficult to quantify.
¶ 16. In her opinion and order, the administrative judge considered the above facts, including all testimony, lay and medical, and based upon a preponderance of the evidence found that Pickens sustained a work-related injury.
¶ 17. In accordance with the aforementioned standard of review, this Court finds that there was substantial credible evidence to support the decision of the circuit court in affirming the Commission, which adopted the findings of the administrative judge. Although this Court, as well as the trial judge, feels that if we were the administrative judge, we might have found this case differently, the Mississippi Workers’ Compensation Commission is the finder of facts in this matter, not this Court. Therefore, we find this issue without merit.
A. WHETHER THE COMMISSION ERRED IN APPORTIONING PICK-ENS’S BENEFITS BY FIFTY PERCENT.
B. WHETHER THE COMMISSION ERRED IN REFUSING TO COUNT PICKENS’S RETIREMENT INCOME IN THE WAGE-EARNING CAPACITY ANALYSIS.
¶ 18. The Mississippi Department of Public Safety asserts that if this Court should find on the job stress was a factor in Pickens’s heart attack, stress certainly cannot be held to be 50% responsible for Pickens’ heart attack in the face of the major risk factors Pickens was not addressing. They also claim that if this Court should affirm the finding that Pick-ens is entitled to benefits, then this Court should direct the employee’s retirement benefits be included in the computation of Pickens’s average weekly wage. However, in their arguments, they failed to cite any authority in support of their contention. An assignment of error that is unsupported by any legal authority need not be considered by the Court. Jones v. State, 481 So.2d 798, 804 (Miss.1985). Therefore, this issues are procedurally barred.
¶ 19. THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT AFFIRMING THE DECISION OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. *1063 COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.

. .According to medical literature, the five risk factors are as follows: smoking, family history, high blood pressure, diabetes, and High or abnormal cholesterol or lipids. After undergoing coronary artery bypass surgery at the time of his first onset, Pickens was presented with the multiple risk factors and was found to have the following: he was a heavy smoker in the past, a diabetic, hypertensive, and had a family history of heart disease.